LAYER *v.* LAYER.

1. COMPROMISE AND SETTLEMENT—FRAUD—WILLS—AGREEMENT NOT
   TO CONTEST.

   Upon a bill to restrain the heirs of a decedent from prose-
   cuting an action at law against complainants upon a
   compromise agreement and for an accounting, where the
   complainants alleged that the agreements upon which the
   action at law was instituted were procured by fraud of
   the defendants, the agreements providing for a settlement
   of all claims by the several heirs and distributees of
   the estate of decedent, and that each of the parties should
   be entitled to amounts stated therein, the complainants
   were not entitled to have the compromise set aside on the
   ground of fraud because it appeared that decedent had
   receipts of the defendants in his possession at the time
   of his death in full payment of all claims against his
   estate and which were in the possession of the executors
   of the estate.

2. SAME—DURESS—THREAT TO CONTEST WILL.

   An alleged threat made by certain heirs of decedent to
   contest his will, whereby they were given a nominal
   amount, made in good faith with the purpose of·carrying
   out the alleged intention, was not such duress or fraudu-
   lent action upon their part as would require the court
   to set aside a compromise agreement made with other per-
   sons in interest adjusting the claims of all of the legatees.

3. SAME.

   Courts as a rule favor the settlement of disputed matters,
   especially between parties interested in the estates of de-
   ceased persons: the promise to forbear contesting a will is
   sufficient consideration to support a contract for the ad-
   justment of the respective claims and rights of the persons
   in interest.

4. SAME—UNCERTAINTY—WRITTEN CONTRACTS.

   A contract in writing made by the legatees of decedent's
   estate, setting up the fact that decedent by his last will
   made provision for the heirs named in the agreement, and
   that he gave nominal amounts to two of them, and that

they threatened to contest his will, that the parties were desirous of settling the estate in an amicable manner, and that in consideration of the payment to each of said legatees of one-eighth of the estate after deducting the necessary expenses of administration and indebtedness of the decedent, who on their part agreed not to file objections, contest the will, or file any claim against the estate, was not void for uncertainty and ambiguity.

Appeal from Kent; Perkins, J. Submitted April 27, 1914. (Docket No. 141.) Decided March 18, 1915.

Bill by John Layer, David Layer, and Christian Layer against Jacob Layer and others for the cancellation of a certain contract and for other relief. From a decree for defendants, complainants appeal. Affirmed.

*Swarthout & Master,* for complainants.

*Linsey & Shivel,* for defendants.

McALVAY, J. Complainants in this cause filed their bill of complaint in the Kent circuit court, in chancery, setting up fraudulent conduct on the part of defendants, and praying that defendants be enjoined from prosecuting certain lawsuits against them, and also to restrain them from parting with a certain contract set forth in the bill of complaint, or attempting to collect anything under said contract from the complainants, and that said contract be declared null and void, the same to be delivered up to be canceled, also for an accounting between defendants and complainants and the estate of John Layer, deceased, who was the father of the parties to this suit, also praying that certain destroyed contracts mentioned in the bill of complaint be re-established, and an adjustment of the respective rights and interests of the parties to this suit be decreed to avoid a multiplicity of suits, and for general relief.

Defendants answered in the nature of a cross-bill, denying all fraudulent conduct on their part and asking that the court hold the contract referred to made between these parties valid and in full force, and to grant them affirmative relief under it, and decrees for money judgments against complainants for the several amounts named in such contract according to its terms. Issue was joined upon these pleadings, and the cause was heard before the court. A decree was granted by the court against the complainants and in favor of defendants, dismissing the bill of complaint and holding the agreement in controversy binding and in full force, and decreeing the complainants severally to be indebted to defendants in the several amounts as stipulated in said contract, and further decreeing that complainants pay the same, together with taxable costs attendant upon six suits which were enjoined at the time this suit was instituted, and also granting a decree against the sureties upon the bond filed in said cause as provided by law, according to the terms of said bond; and for all costs.

The dispute in this case is one between the members of the same family, the heirs of one John Layer, Sr., who died testate in August, 1910, aged 86 years, having made a will on May 3, 1906. His estate was duly probated, leaving the sum of over $36,000 to be distributed after paying expenses of administration. By the provisions of the will defendants were given the nominal sum of $10 each in addition to certain advancements made to them, and the balance of the estate, including advancements, to be divided equally among the remaining children. Three of the heirs of John Layer are not parties to this suit, namely, Daniel Layer, Catherine Loree and Lydia Simpson. It will not be necessary to set forth a copy of the will in this opinion for the reason that there is no controversy upon the will. By reason of the practical dis-

inheritance of defendants by the terms of the will, they retained counsel to contest its validity. Prior to September 27, 1910, the date set for the probate of the will, for the purpose of settling their difficulties, an agreement was prepared by defendants' counsel to be entered into by all the heirs to equalize the disposition made by the will, which was practically an equal division of the estate, and by its terms defendants, if it was agreed upon, bound themselves not to contest the will or present any claims against the estate for care of said deceased, or other claims. This was then signed by both defendants and Catherine Loree and Daniel W. Layer, on September 22, 1910. None of the others signed this agreement.

The following undisputed facts would better be stated in this connection: About eight years before his death John Layer, Sr., and his wife, the mother of these children, went to make their home with the defendant Emma Klipfer and her husband, where they lived 14 months, when the mother died. A few months after the mother's death the father had a disagreement with Emma and her husband and then went to live with the defendant Jacob Layer, where he remained about one year, when they disagreed and the father left. He then went to live with his son John Layer, where he remained until his death. Before deceased, John Layer, Sr., left the home of Emma Klipfer two settlement agreements were entered into and signed by them, dated July 6, 1904. These are of the same import and do not require to be stated at length. They purported to be a mutual settlement of all matters between them, including the purchase and sale of a farm and a receipt for full payment of the farm and release from all liability to support him and for care and support of himself and deceased wife. These writings made no reference to the estate of John Layer, Sr. When deceased left Jacob's home

there is proof tending to show that he took from Jacob a receipt for board, which the son snatched from his father and burned.

The grounds upon which defendants proposed to contest the will were mental incompetency, undue influence, and insane delusions. The negotiations between the parties were not completed on September 22, 1910, but were renewed on the date fixed for the probate of the will and resulted, on that date, September, 27, 1910, in an agreement of settlement, in which all joined. This new agreement was reduced to writing and was signed by all of the heirs of said deceased. It reads as follows:

"This memorandum of agreement made and entered into by and between Jacob Layer and Emma Klipfer, known as parties of the first part, and David F. Layer, Catherine L. Loree, Lydia Simpson, Daniel W. Layer, John H. Layer, and Christian Layer, hereby known as the parties of the second part, each for himself, separately and individually, on this 27th day of September, A. D. 1910, witnesseth: Whereas, the said above-mentioned parties are each and all direct heirs of one John Layer, now deceased; and whereas, the said John Layer, deceased, did on the 3d day of May, 1906, execute and make a certain instrument, purporting to be his last will and testament, which said will is now offered for probate in the probate court, in the county of Kent and State of Michigan; and whereas, the said John Layer, deceased, did in his said will make certain provisions for the said above described heirs, in and to the property which he would die seised; that in said will he provided that the said first parties, Jacob Layer and Emma Klipfer should have of his said estate, the sum of $10 each; and whereas, the said first parties were about to contest said will in said court, and about to file objections to the probate of said will:

"Now, therefore, each and all of the said parties being desirous of settling said estate in an amicable manner, and without any lawsuit or contest in court, said first parties hereby agree not to contest said will in any court and allow the same to be properly pro-

bated without contest on their part for and in con-
sideration of the promises hereinafter made by and
on the part of each of said second parties each indi-
vidually and for himself. Said first parties hereby
agree not to present any claims against said estate
for the care of said deceased, or other claims whatso-
ever.

"Each of said second parties hereby agree for and
in consideration of the above undertakings and prom-
ises of said first parties to pay to each of said first
parties a sum of money equal to one-eighth of said
estate after the debts and expenses of administration
are fully paid minus $1,000.00, after the advance-
ments heretofore made to Jacob Layer of one thou-
sand dollars, and the advancements of thirteen hun-
dred dollars made to Emma Klipfer have been prop-
erly credited to said estate in like manner as the vari-
ous advancements made to each of the parties of the
second part has been credited to said estate. The
meaning of this agreement in this particular is that
each of said second parties shall pay to each of said
first parties their equitable portion of said sum of
money to be paid to said first parties as aforesaid,
after said second parties receive their share of said
estate under said will.

"In witness whereof we each for ourselves have
hereunto set our hand and seal on the day and year
first above written.

> "JACOB LAYER.
> "EMMA KLIPFER.
> "CATHERINE L. LOREE.
> "LYDIA SIMPSON.
> "DANIEL W. LAYER.
> "DAVID LAYER.
> "JOHN H. LAYER.
> "CHRISTIAN LAYER."

After the foregoing settlement was made and
agreed upon, counsel for defendants consented to the
admission of the will to probate, and defendants did
not contest the will or present any claims against the
estate of John Layer, deceased. The record shows
that the probate files in the matter of the estate of
John Layer were offered and received in evidence,

but with the exception of the will none of such probate proceedings are printed in the record. However, it is not disputed that the estate of John Layer, Sr., was duly probated, distributed according to the terms of the will, and closed. Three of the heirs, according to the terms of the settlement agreement, after receiving their shares of this estate, paid their respective portions to each of the defendants. The three complainants, who are the other heirs, although requested to perform on their part, refused to pay anything to the defendants or either of them. These defendants, on September 22, 1911, almost one year after this settlement was made, severally brought suits against each of the complainants in assumpsit upon this contract for the amount each had agreed to pay. In these cases each defendant pleaded to the declaration filed therein and, after the cases were noticed and placed on the calendar for trial, filed their bill of complaint in the instant case November 28, 1911, wherein defendants were restrained from further prosecuting such cases on the law side of the court.

The principal question in the case relates to the validity of the contract in question entered into between the defendants and all the other heirs of John Layer, Sr., deceased. Complainants attack its validity upon three grounds: *First,* that there was no consideration; *second,* that the contract was fraudulently procured by the defendants; *third,* that it is void for uncertainty; that it is contradictory and indefinite.

We may consider the first and second grounds together. It would seem that the principal ground of fraud is based upon the claim that complainants were not aware at the time they entered into this agreement, that deceased had certain settlement receipts from defendants which were given by them at the time he left their home. These receipts, taken in con-

nection with some of the uncontradicted testimony in the case, could have no bearing upon the matter of the settlement contract except, perhaps, as to the following clause:

"Said first parties [the defendants] hereby agree not to present any claims against said estate for the care of said deceased, or other claims whatsoever."

The complainants claim that they had no knowledge of the existence of these receipts until after the settlement was made, and would not have entered into the contract had they known of them. Either one or both of the receipts were found in the safe of the deceased and were, after his death, in the possession and control of two of the complainants, who were named executors in the will. The clause above quoted, contained in the agreement as finally executed, was not part of the agreement first offered as a settlement by these defendants which the complainants refused to execute. It is contained in the final agreement, which the undisputed record shows was submitted to complainants' solicitors and signed in their office in the presence of one of them by the complainants, after having advised with him upon the matter, and there is no proof in the record that defendants had ever received anything from the deceased father which should be charged against them in the distribution of the estate except the advancements which were known to complainants. As to the receipt given by the father to his son Jacob, there is no evidence in the case which indicates that it was anything more than a receipt for board. Had these writings, including the one given to Jacob, been all of the said character, neither one of them would furnish any legal ground upon which complainants would have a right to repudiate their contract.

Complainants in their brief claim that the contract as executed is not the contract which they intended

to execute. In addition to what has been said as to when, where, and under what circumstances this contract was executed, we do not find in the record that any fraud was practiced upon the complainants or the other heirs by defendants in the procurement of this contract. At the time it was entered into all of the parties knew of its contents and the record shows that they signed voluntarily, with full knowledge of all the facts and circumstances that had preceded its execution, and after consultation with their solicitors who were aware of its contents.

It appears from the record that the defendants had intended to contest the probate of the will and had so stated, and undoubtedly had also stated they would do so if the matter could not be adjusted amicably. In taking this position they were strictly within their legal rights and such statements do not amount to duress or even threats if made in good faith.

There is nothing in the record to show that the position of defendants in this matter was not founded upon an honest belief that they had a right to contest the probate of this will. On the contrary, the evidence in the case indicates that the condition of the father mentally was of such a nature that there was talk in the family of having a guardian appointed; that at times he indicated mental unbalance; and also evidence indicating great influence had over him by the wife of complainant John Layer.

The courts, as a general rule, favor the settlement of disputed matters and controversies, and more particularly are. the settlements of disputes among those interested in the estates of deceased persons favored. It is a well-settled rule of law in this State and many other States that a promise to forbear the contest of a will, when made in good faith, is a sufficient consideration to support a contract. *Conklin* v. *Conklin,* 165 Mich. 571-580 (131 N. W. 154).

There is no evidence in this case to show that defendants were not in good faith in the matter of contesting the will of John Layer, Sr., deceased. On the contrary, their good faith is supported by the great weight of the evidence.

This agreement was not void for want of consideration, nor was it void for ambiguity and uncertainty. We agree with the learned circuit judge that it should be enforced.

The decree of the circuit court is, in all respects, affirmed, and a decree will be entered in this court of like terms and effect, with costs of both courts in favor of defendants and against complainants to be taxed.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.