APPEAL OF HANNAN.

*In re* HANNAN'S ESTATE.

1. WILLS—SETTLEMENT AGREEMENT VALID.

A settlement agreement, approved by the probate court, between the testamentary trustee and the testator's widow, who had brought suits in the United States Court and the State Court to avoid her election to take under the will, whereby said suits were dismissed and she was given certain sums of money in addition to the provisions for her in the will, *held*, valid; the subject-matter being within the jurisdiction of the probate court.

2. SAME—RIGHTS OF RESIDUARY LEGATEE CONSENTING TO SETTLEMENT NOT LOST THEREBY.

By approving said settlement agreement a charitable organization named as residuary legatee, *held*, not to have lost its rights under the will.

3. SAME—HEIR AT LAW NOT CONCERNED IN RESIDUUM.

Whether a certain legacy is lost because of said settlement agreement, *held*, no concern of plaintiff, an heir at law, since the amount thereof would not fall intestate but under the will would pass to the residuum and go to the residuary legatees.

Case-made from Wayne; Lamb (Fred S.), J., presiding. Submitted April 17, 1924. (Docket No. 15.) Decided June 18, 1924.

Frank E. Hannan appealed from an order of the probate court approving a settlement agreement in the matter of the estate of William W. Hannan, deceased. From a judgment dismissing the appeal, he appeals. Affirmed.

On effect of spouse's election to take against will upon rest of will, see note in 27 L. R. A. (N. S.) 602.

*John R. Rood* (*Ormond F. Hunt*, of counsel), for appellant.

*Stevenson, Carpenter, Butzel & Backus* (*William L. Carpenter* and *Thomas G. Long*, of counsel), for appellee trustee.

*Lucking, Helfman, Lucking & Hanlon*, for appellee Luella Hannan.

WIEST, J. This is review, by case-made, of a judgment dismissing an appeal from an order of the probate court approving a settlement agreement in the matter of the estate of William W. Hannan, deceased. William W. Hannan died, testate, December 24, 1917, without issue, leaving his widow, Luella Hannan, his brother, Frank E. Hannan, and the children of a deceased brother as heirs at law.

December 18, 1916, he made his will, bequeathing 8,000 shares of the capital stock of the Hannan Real Estate Exchange to Guy S. Greene, nephew of his wife, and 3,000 shares to Frank E. Hannan, his brother. He bequeathed the household furnishings and his personal effects to his wife. The rest, residue and remainder of his estate, amounting to the value of about $4,000,000, he devised and bequeathed, in trust, to his wife and two others as trustees, with power to have, hold and dispose of the same for uses and purposes directed in the will. He directed the trustees to pay his wife, during her life, $2,500 each month, pay her brother, Clay A. Greene, $25 a week during life, pay Guy S. Greene $320,000, Frank E. Hannan, $370,000, and pay others mentioned stated sums, amounting in all to $905,000. The will provided:

"If my wife should elect to take otherwise than under this will, I deem it but just and proper that she should herself provide for her brother, Clay A. Greene, and her nephew, Guy S. Greene, and therefore, in that event, all provisions whatsoever in said will

for the benefit of Clay A. Greene and Guy S. Greene, or for the benefit of either of them, except the bequest to the latter of eight thousand (8,000) shares of the capital stock of the Hannan Real Estate Exchange, shall be and the same hereby are revoked and cancelled.

"In the event of my wife making said election (the election to take otherwise than under this will), the cares and burdens of managing her own property should not be augmented, as they would be if she were also an executor of this will and a trustee of the remainder of my estate, and therefore, in such case, this will is to be read as if it named Flavius L. Brooke and Matthew Slush and no one else to be executors and trustees, with all the power and authority given the executors and trustees in this will. Said executors and trustees shall, in that event, have full authority to make and carry out an agreement with said Luella Hannan as to what money or property shall be paid or transferred to her to satisfy her claim to take otherwise than under the will, and the entire residue of my estate shall be administered and distributed in accordance with the provisions of this will, except as hereinafter stated. * * *

"To pay all legacies therein mentioned, as therein described, excepting, of course, the legacy to my wife, the legacies to her brother, Clay A. Greene, and to her nephew, Guy S. Greene. * * *

"When said property is freed from said trust (whether it is freed at the death of my wife, Luella Hannan, or whether a part is freed then and a part of it at the later death of said Clay A. Greene), I bequeath the same to such charities for the people of the city of Detroit, and such charitable institutions in the city of Detroit (and by 'Charities' I mean any form of public benefit, by no means excluding public parks and playgrounds) as my wife, Luella Hannan, may in her will appoint. She may give all to one charity or to one charitable institution or she may distribute the same among several charities or charitable institutions in such proportion as to her seems wise. If my said wife shall desire, during her lifetime, to devote a portion of said property to any of the charities or charitable institutions above described, and if in

the judgment of the two remaining trustees this can be done with entire safety (keeping in mind the object for which the trust is created) she shall have the right to do so; and to justify the appropriation of money or property in this contingency, there shall be filed in the probate court a proper written instrument, signed by said wife and approved by each of the other trustees.

"If my wife shall fail, either entirely or partially, to designate, as hereinbefore required, to what charity or charitable institutions said property shall go, then I bequeath said property to the endowment fund of the Children's Aid Society of Detroit."

The will was duly admitted to probate February 13, 1918, and December 18, 1918, Mrs. Hannan filed an election to take under the will. This, of course, was unnecessary, an election only being necessary in case she elected not to take under the will. February 18, 1919, Mrs. Hannan, under power granted by the will, appointed the sum of $2,500,000 for a memorial hall to be erected in the city of Detroit. July 2, 1919, administration of the estate, by probate court order, was closed, the executors discharged and the property turned over to the trustees. October 14, 1919, Mrs. Hannan, claiming residence in the State of California, filed a bill in equity in the United States district court at Detroit, to avoid her election to take under the will and be decreed the right to take under the statute, and to set aside the appointment for a memorial hall, alleging that, at the time she filed such election and made such appointment she was, by reason of sickness, mentally incompetent. In this bill she made the executors and trustees, and Guy S. Greene, Clay A. Greene, two others, and the Children's Aid Society, defendants. Mrs. Hannan also commenced suit in the Wayne circuit, in chancery, involving some insurance on the life of Mr. Hannan.

While these suits were pending one trustee died, and an agreement was made May 26, 1921, between the

remaining trustee and Mrs. Hannan that she should dismiss the suits and have out of the estate, in addition to the provisions for her in the will, $200,000 at that time, $100,000 January 2, 1922, and $50,000 May 26, 1924, if then living, and $50,000 May 26, 1926, if then living.   This agreement was made subject to the approval of the probate court.   A petition for approval of this agreement was filed in the probate court by the trustee, set up the subject-matter of the agreement, alleged it was for the best interest of the estate and that Guy S. Greene had agreed to contribute, out of the legacy payable to him under the will, the sum of $54,800 toward the settlement, and asked the court to make an order approving the terms of the settlement and authorizing and directing the trustee to make payments to Mrs. Hannan in accordance with the agreement.   Mrs. Hannan joined in the prayer of the petition and there was indorsed thereon: "Approved, James V. Oxtoby, Attorney for Children's Aid Society."   No notice of this petition was given Frank E. Hannan and, while he knew negotiations were being had toward such settlement, he took no part therein.

June 9, 1921, the probate court made an order approving the settlement agreement and authorizing the trustee to carry out the terms of the same, and also:

"It further appearing that said Children's Aid Society has been put to trouble and expense in and about said suit in the United States district court for the eastern district of Michigan, having been made a defendant thereto, and in and about said settlement and this hearing, all solely because of its interest in said trust estate.

"It is ordered that the trustee pay out of the estate of said deceased the sum of two hundred ($200) dollars to James V. Oxtoby, attorney for said Children's Aid Society as and for and in full of all

counsel fees and expenses in and about the matters aforesaid."

In the claim of appeal plaintiff gave as reasons: that the order prejudiced his rights, was made without notice to him, was beyond the jurisdiction of the court, the terms approved are contrary to the terms of the will and in violation of his rights under the will.

In the circuit the appeal was dismissed. Appeals from probate orders are allowed to parties aggrieved. Plaintiff was "aggrieved" by the probate order to the extent that he hopes to profit if it stands. The order took nothing from him, and, if set aside, will give nothing to him. The only hope he has is that the order will stand and, so standing, be held to operate as an elimination of the residuary legatee and his substitution as an heir at law to participation in what his brother intended for orphans and the helpless.

The settlement agreement was valid and the probate court, under the facts alleged in the petition for approval and direction, had jurisdiction over the subject-matter. *Conklin* v. *Conklin*, 165 Mich. 571; *Layer* v. *Layer*, 184 Mich. 663; *Baas* v. *Zinke*, 218 Mich. 552; *Metzner* v. *Newman*, 224 Mich. 324. Eight days before the agreement was signed, the governor approved Act No. 249, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 13818 [4-7]), providing for just such agreements, when minors are parties in interest, and approval thereof by the probate court. The significance of this act is its recognition of the fact that under the law in this State no legislation was necessary to enable adults to enter into such agreements. In passing we also notice, the act provides that the agreement is to be executed by all competent persons, "having estates, interests or claims, legal or equitable, which will or may be limited or diminished in either extent or value by such compromise, settlement or ad-

justment if consummated." Of course, we do not place decision upon this act, for it relates to infants and besides was not effective at that time.

Anticipating affirmance of the probate order plaintiff asserts not a grievance but an advantage, for he seeks to employ the very order he appealed from as a lever to pry loose the residuary legatee under the will. He claims the result of the order is to eliminate the residuary legatee, constitute the residue of the estate intestate property and he, as an heir at law, stands ready and willing to take his share thereof. He has had a share of the estate as a beneficiary under the will and it is noticeable he risks no part thereof in this endeavor to get more. It is anomalous, to say the least, that in losing his appeal he wins the right to raise the point presented. Armed with the righteousness of what he claims to be the law, he seeks vindication of his brother's intent expressed in the will, with the curious result that, if successful, he defeats one of the great objects of the will.

We might consider this case ended by affirmance of the judgment in the court below, but plaintiff filed a bill in the Wayne circuit, in chancery, involving the same questions here presented, and the appeal from the dismissal of that bill has been heard with this case. We, therefore, take up and dispose of all contentions.

If the contingent residuary legatee, designated in the will, has not renounced or lost its rights under the will through its attorney's approval of the probate order, then plaintiff has no possible standing in court. For in no event can he take as an heir at law so long as there is a residuary legatee.

Has the residuary legatee, by renunciation or act, lost the right to take under the will? The rule relative to renunciation is stated in 40 Cyc. p. 1898, as follows:

"As already shown, a beneficiary under a will is not bound to accept a legacy or devise therein provided for, but may disclaim or renounce his right under the will. However, in order to be effective, the disclaimer or renunciation must be express, clear, and unequivocal, and with knowledge of the existence of the will, so as to prevent all future cavil and operate as a *quasi*-estoppel. * * * The burden of proving renunciation or disclaimer is upon those alleging it."

In the case at bar the facts are not in dispute, and it is a question of law whether the approval of the settlement constituted an express, clear and unequivocal disclaimer or renunciation or estops right to take under the will. As residuary legatee the Children's Aid Society was made a defendant in the suit in the Federal court, involving rights of the widow in the estate, and our attention has been called to no disclaimer filed there by the society. The rights of the society, as residuary legatee, were recognized in the application for approval of the settlement agreement and by the probate court in allowing the attorney for the society $200 out of the estate for representing the society in the litigation in the Federal court. All such matters are consistent with an acceptance, by the society, of the provisions in the will. It was participation by virtue of rights as residuary legatee and not renunciation. But, it is said, the positive provisions of the will were changed by the settlement approved by the attorney for the society, and the amount of money to be paid to Mrs. Hannan beyond the provisions for her in the will, was accomplished by way of surrender of contingent right thereto by the society, and we are urged to hold that a residuary legatee, under such circumstances, by relinquishing contingent right to part of a legacy, loses right to take any. It is neither good law nor compatible with the course of administration of estates to hold that an effort, in good faith, to save rights under a will, by

consenting to an adjustment of litigation hazarding in character results in renunciation by a residuary legatee if its adjustment lessens the expectancy of such legatee. The law places no such penalty upon an effort, honestly made, to conserve rights under a will. There was no renunciation intended in fact or worked by operation of law. In saying this we pass by the point that the attorney for the society could not, by his approval of the petition, renounce or forfeit, or, by his act, bring about estoppel as to the rights of the residuary legatee.

The learned circuit judge was of the opinion that the settlement resulted in Mrs. Hannan's taking against instead of under the will. We deem it immaterial, so far as affecting the residuary legatee provision, whether she took under or against the will. The intent of the testator to devote the residue of his estate to charitable purposes is so plain and the terms of the will so positive against any other result that it would avail plaintiff nothing to succeed in eliminating the designated legatee. We find no occasion, however, to resort to the doctrine of *cy pres*, but would, if necessary, unhesitatingly do so, for the residuum was devoted to charitable purposes and this most effectually cut the same off from any distribution as intestate property. If the particular charity designated to take be held to have lost right to do so, all charities of like character are not thereby eliminated and the purpose of the testator defeated. We hold there has been no renunciation by the residuary legatee and no act working forfeiture or constituting an estoppel.

If Guy S. Greene has lost his legacy of money the amount thereof does not fall intestate, but passes to the residuum and goes to the residuary legatee. We do not hold that Mr. Greene may not take under the will, but do hold that, whether he so takes or not is of no concern to plaintiff, as in no event can plaintiff

227—Mich.—37.

come in for participation in the estate beyond his specific legacies. This ends the case and we shall spend no time discussing elementary principles and abstract propositions of law.

The judgment is affirmed, with costs against plaintiff.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.