*In re* LACROIX'S ESTATE.
RIVARD *v.* LACROIX.
LACROIX *v.* SAME.
DEZIEL *v.* SAME.
SAME *v.* SAME.

1. WILLS—RESIDUARY LEGATEES HAVE INTEREST IN RECOVERING FOR ESTATE PROPERTY BELONGING TO TESTATRIX.

Beneficiaries under a will, as residuary legatees, have an interest in recovering back into the estate, after the death of testatrix, any money or other property of which she had, in her lifetime, been deprived through the wrongful act of any one acting for and in her behalf.

2. GUARDIAN AND WARD—REGULARITY OF GUARDIANSHIP PROCEEDINGS MAY NOT BE RAISED BY WARD IN COLLATERAL PROCEEDING.

On petition to set aside the judgment in an action at law and decrees in four chancery cases rendered against petitioner while he was under guardianship by order of the probate court, *held,* that, under the record, petitioner is in no position to raise the question of the regularity of the appointment of the guardian.

3. COMPROMISE AND SETTLEMENT—SETTLEMENT OF DISPUTES ARISING OUT OF TESTAMENTARY DISPOSITIONS OF PROPERTY ENCOURAGED BY COURT.

Amicable settlements of disputes arising out of the provisions of testamentary dispositions of estates of deceased persons are recognized and justified by the law and are encouraged by the courts.

4. SAME—SETTLEMENT OF DISPUTE APPROVED BY GUARDIAN AND WARD MAY NOT BE REPUDIATED BY WARD AFTER HIS DISCHARGE FROM GUARDIANSHIP.

An agreement settling disputes between petitioner and others in regard to the estate of a deceased sister, whose funds he was charged with having appropriated, which was approved and joined in by his general guardian, and consummation of which was urged by him, and which was justifiable under the record, may not be repudiated by him after his discharge from guardianship.

5. SAME—JUDGMENT.

Consent decrees against petitioner in chancery cases which but carried into legal consummation a settlement agreement to which he and his guardian consented, and which placed no additional burden upon his property and gave to the other parties to the agreement no additional advantage, may not be set aside after his discharge from guardianship.

6. JUDGMENT—PARTITION—DECREE MAY NOT BE DISTURBED WHERE COURT HAD JURISDICTION.

The decree in a partition suit, in which the court had jurisdiction of both the person and the thing, and which was justifiable under the record, may not later be disturbed.

7. GUARDIAN AND WARD—RESIDENT OUT OF STATE FOR MEDICAL TREATMENT NOT A NONRESIDENT.

A resident who was taken out of the State for care and medical treatment merely, and who refrained from all acts of citizenship in the foreign State, may not question the validity of guardianship proceedings in this State on the theory that he was a nonresident.

8. SAME—ESTOPPEL—WARD WHO WAS DISCHARGED FROM GUARDIANSHIP ON HIS ALLEGATION OF RECOVERY MAY NOT QUESTION VALIDITY OF GUARDIANSHIP PROCEEDINGS.

One adjudged mentally incompetent and placed under guardianship, who was finally relieved therefrom, on his own application, on the ground that he had regained his mental competency, may not thereafter attack the validity of the appointment of the guardian.

Error to and appeals from Wayne; Merriam (De Witt H.), Marschner (Adolph F.), and Lamb (Fred S.), JJ. Submitted June 19, 1928. (Docket Nos. 77–81, Calendar Nos. 33,547–33,551.) Decided October 1, 1928. Rehearing denied December 4, 1928.

James E. Lacroix and others presented for probate the last will of Susan A. Lacroix, deceased. The will was allowed in the probate court, and Louise A. J. Rivard and others appealed to the circuit court. Judgment for contestants. Proponent James E. Lacroix brings error.

Separate bills by Henry J. Lacroix, Louis A. Deziel, Louise A. J. Rivard, and Elmira Deziel, against James E. Lacroix for an accounting. From a decree for plaintiffs, defendant appeals.

On petition to set aside the judgment and decrees, the cases were consolidated and heard as one. Affirmed.

*William Look* and *Frank A. Martin,* for appellant.

*Lucking, Hanlon, Lucking & Van Auken, Campbell, Bulkley & Ledyard,* and *Stevenson, Butzel, Eaman & Long,* for appellees.

WIEST, J. Three circuit judges, sitting *en banc,* heard the issues involved in the above consolidated cases and rendered an opinion upon the facts and law so clearly in accord with our views that we adopt the same:

"The above entitled causes were consolidated for the purpose of the hearing of certain petitions filed therein by James E. Lacroix, the above named mentally incompetent person to set aside and hold for naught the judgment in the law case and the decrees entered in the four chancery cases. The petitions are of substantially the same import and are predicated upon the same grounds so far as applicable to the specific facts appertaining to each individual case. The petitions came on to be heard before three judges of said court, sitting *en banc.* This opinion is a general one covering the essential facts applicable to all of the cases, and at the same time limited to the essential facts applicable to each in the conclusions reached.

"The petitioner alleges and relies upon the following grounds for the relief he seeks:

"(1) That James E. Lacroix was never legally placed under guardianship.

"(2) That the probate court never acquired jurisdiction of his person or property.

"(3) That the circuit court of Wayne county was without jurisdiction to enter the judgment in law case No. 72,412, and the circuit court of Wayne county, in chancery, was likewise without jurisdiction to enter the decrees in chancery cases Nos. 63,963, 69,239, 75,597, and 94,566.

"(4) That the aforesaid judgment and decrees of said court deprived him of his property without due process of law.

"(5) That the settlement agreement upon which the judgment and decrees were based was the result of collusive combination and conspiracy on the part of the plaintiffs in said suits, and that Louise A. J. Rivard, Ernestine Hope, Ann Hambright, Henry J. Lacroix and Elmira Deziel had, previous to August 5, 1924, entered into an unholy alliance and collusive agreement and conspiracy to rob and plunder said James E. Lacroix of his property.

"(6) That petitioner was at all times mentally competent to have the care of his person and property.

"(7) That by reason of the alleged guardianship of his person and property he was under illegal disability to take part in and challenge the proceedings in the several suits above referred to.

"(8) That the petitioner, James E. Lacroix, was, on the 18th day of December, 1925, adjudged to be mentally competent to have the care and control of his person and property and has not been guilty of laches in pursuit of his remedy.

"From the record made on the hearing of said petitioner the court finds the facts as follows:.

"That at, and for some length of time prior to the month of April, 1919, James E. Lacroix was a resident of the city of Detroit, county of Wayne, and had acquired considerable property; that in April, 1919, due to his physical and mental condition, he was taken to the home of his sister, Elmira Deziel

of Windsor, Canada; that he was unmarried and needed care.

"That on account of his condition and in view of the condition of his property, his sister, Elmira Deziel, had the attorney of James E. Lacroix, Mr. Wesley L. Nutten, prepare for her a petition to the probate court for the county of Wayne asking that a guardian be appointed of the person and property of said James E. Lacroix; that such petition was filed with the probate court on the 31st day of July, 1919; that the day of hearing was set for August 22, 1919; that personal service was made on August 5, 1919, of a copy of the order of hearing upon James E. Lacroix in Windsor, Canada, and proof thereof filed in the probate court.

"That on the day set for the hearing, August 22, 1919, Joseph A. Belanger of Detroit, Michigan, was appointed general guardian of the person and property of said James E. Lacroix and subsequently qualified as such.

"That at the time of the filing of said petition for the appointment of guardian and from thence hitherto the residence of said James E. Lacroix was, has been and is in the city of Detroit, Wayne county, Michigan; that while he was at his sister's in Windsor, he was there seeking to get back his physical and mental condition and was not there with a change of legal residence in view.

"That, in February, 1918, Susan A. Lacroix, a sister of James E. Lacroix, with whom he had long made his home, and who had, years before, received from her mother considerable property, died, leaving a last will and testament, by the terms of which a large portion of her property was left to James E. Lacroix.

"That for some years prior to the death of Susan A. Lacroix her brother, James E. Lacroix, had done her business largely, and handled a great deal of her money derived from sales of real estate, rents, etc.; that during this time and while so acting, James

E. Lacroix was acquiring real estate in his own name, and, in some instances, using her funds in his hands for that purpose.

"That the will of Susan A. Lacroix, deceased, was admitted to probate in 1918, and an appeal taken from the order admitting the will to probate to the circuit court for the county of Wayne.

"That under the provisions of the will of said Susan A. Lacroix, her niece, Louise A. J. Rivard, and her sister, Elmira Deziel, and her brother, Henry J. Lacroix, were beneficiaries in addition to James E. Lacroix.

"That following the death of Susan A. Lacroix and on the 10th day of May, 1918, Louise A. J. Rivard, *et al.,* filed a bill in chancery against James E. Lacroix seeking accounting regarding his transactions with the funds of his sister, Susan A. Lacroix, in her lifetime; that James E. Lacroix was personally served with process therein, on May 14, 1918, and appeared by attorney, former Judge Hally, in May 28, 1918; that an answer was filed October 3, 1918; that later Joseph A. Belanger, who was appointed general guardian of James E. Lacroix, was appointed by the circuit court guardian *ad litem* for his ward, James E. Lacroix, in March 4, 1920.

"That, on the 18th day of April, 1919, Henry J. Lacroix filed a bill in the circuit court for the county of Wayne, in chancery; against James E. Lacroix, seeking equitable relief; that James E. Lacroix had his appearance entered in said cause by attorney.

"That, on the 20th day of February, 1920, Elmira Deziel filed her bill in the circuit court for the county of Wayne, in chancery, against James E. Lacroix seeking equitable relief.

"That during the months of November and December, 1919, and a part of January, 1920, the attorneys for the respective parties had many conferences for the purpose of arriving at a settlement of all the cases then pending in the circuit court for Wayne county, including the probate appeal; that,

on the 20th day of January, 1920, an agreement and settlement was reached, reduced to writing, signed by all parties in interest, the guardian of James E. Lacroix signing for him; that a petition with the settlement agreement attached was presented to the probate court for the county of Wayne, on the 20th day of January, 1920, and was on the same day approved by the judge of that court.

"That in pursuance of the provisions of this settlement agreement and in accord with its intent and purpose, Judge Codd directed a verdict against the validity of the will of Susan A. Lacroix and judgment was entered accordingly and the matter remanded to probate court; and in further pursuance of the provisions of said settlement agreement and to carry out its full intent and meaning and protect the title to the property involved, by advice of counsel, all parties by their respective attorneys consenting, formal decrees were taken in the three chancery cases on the 5th day of March, 1920, before Hon. Frank D. F. Davis, circuit judge.

"That no appeal was taken by James E. Lacroix from the approval of the settlement agreement by the probate court.

"That, in the spring or summer of 1922, James E. Lacroix returned from Windsor, and on the 5th day of October, 1922, filed a petition with the probate court of Wayne county seeking to be discharged from guardianship, claiming in and by his petition that he was then competent to care for his own person and property; that upon the hearing in the probate court on this petition, he was denied relief; that, at no time did he raise any question about the regularity of the guardianship under which he was held.

"That, during his stay in Windsor, Joseph A. Belanger, his guardian, and Wesley L. Nutten, attorney for the guardian, went to see and consult with him on many occasions concerning his property and at all times kept him apprised of what

was being done in relation thereto; that he, on different occasions urged the consummation of the settlement agreement of January 20, 1920; that this settlement agreement did not involve any property he had acquired before his mother's death.

"That, in further pursuance of the settlement agreement and to partition among the parties in interest therein, the real property held in common since the settlement agreement was made and carried into effect, Louis A. Deziel and William Lucking, as plaintiffs, on the 7th day of August, 1922, filed their bill in the circuit court for the county of Wayne, in chancery, against Joseph A. Belanger, guardian, and James E. Lacroix, for a partition of the real estate held in common; that on the 28th day of September, 1922, James E. Lacroix received and receipted for a copy of the bill of complaint and other papers in connection with said partition suit; and on the 9th day of October, 1922, he entered his own appearance in said suit; that his guardian appeared by attorney, Wesley L. Nutten, an answer was filed and the case brought to an issue.

"That, in June, 1924, in view of the desire of James E. Lacroix to question in the partition suit the validity of the settlement agreement of January 20, 1920, Mr. Nutten filed in said cause his petition praying for the appointment of a guardian *ad litem* to investigate and advise in relation to that matter; by order of the court the Detroit Trust Company was appointed, acted in that respect and later made its report to the court ratifying the proceedings; that on the 26th day of June, 1924, the case was heard, all parties being represented, the said James E. Lacroix being present in person and by guardian *ad litem;* that a decree was ordered for partition in accordance with the prayer of the bill, and on August 5, 1924, a decree was settled and entered in said cause.

"That throughout all the litigation involved in this proceeding, the rights of James E. Lacroix were

carefully and consistently guarded by a guardian of excellent standing and of well known repute; and that in addition thereto counsel who represented the guardian throughout their various cases and continually and consistently guarded the rights and interests of James E. Lacroix were all men of high standing in the community and of unquestioned professional probity.

"That there is no proof in this record that rises to the dignity of evidence tending to establish the claims in the petition of the existence, at any time of an unholy alliance, a confederacy, or a conspiracy to overreach, rob or plunder James E. Lacroix.

"That on the 9th day of December, 1924, James E. Lacroix again, by his attorney, Judge Look, filed a petition in the probate court for Wayne county seeking to be discharged from guardianship; that said petition was founded on the ground that he was then in condition to have the care and control of his person and property; and at no time was the question carried that the original appointment of the guardian was irregular or void; that on the hearing in the probate court the petition was granted; that an appeal was taken to the circuit court, where this case was heard before a jury on the 18th day of December, 1925, a verdict was returned declaring him to be mentally competent at that time to have care and control of his person and property.

"That on the 10th day of February, 1927, the petitions upon which this proceeding was held were filed in this court.

"Conclusions.

"1. Unquestionably Susan A. Lacroix had the right to dispose of her property by will. But the beneficiaries under that will as residuary legatees had an interest in recovering back into the estate, upon her decease, of any money or other property of which she had in her lifetime been deprived

through the wrongful act of anyone acting for and in her behalf.

"2. Under this record the petitioner, James E. Lacroix, is in no position to raise the question of the regularity of the appointment of the guardian under date of August 22, 1922. *Cornett* v. *Cornett,* 122 Mich. 685.

"3. Amicable settlements of disputes arising out of the provisions of testamentary dispositions of estates of deceased persons are recognized and justified by the law and are encouraged by the courts. The settlement agreement, in controversy in these cases, under date of January 20, 1920, was, in the face of the record, justifiable and in accord with the authorities. It was not only approved and joined in by the general guardian but was also urged to consummation by the ward himself. He is now in no position to repudiate it. *In re Hannan's Estate,* 227 Mich. 569; *Metzner* v. *Newman,* 224 Mich. 324 (33 A. L. R. 98).

"4. The taking of consent decrees in chancery suits Nos. 63,963, 69,239 and 75,597 was but the legal consummations of settlement agreement to carry into effect its intent and purpose. No additional burden was placed upon the property of James E. Lacroix thereby nor were the other parties to such agreement given any additional advantage by reason thereof.

"5. In the partition suit, No. 94,566, the court had jurisdiction of both the person and the thing, and the decree entered therein on the 5th day of August, 1924, was justified by the record and should not now be disturbed.

"It follows from what has been said that the petitions should be denied and it is so ordered. Separate orders may be prepared in each case to be signed by the individual judge to whom the case or cases were assigned."

Little more need be said. The probate court had jurisdiction to appoint a guardian. Mr. Lacroix was a resident of the city of Detroit. He did not go to Windsor *animus manendi*. He had not even planned on going there. He was sick and living alone and some of his relatives decided to take him to the home of his sister in Windsor. He left his home in Detroit intact, only turning the key in the door. He refrained from all acts identifying him with Ontario citizenship, such as the payment of taxes and participation in public affairs. He was personally served with citation giving him notice of the time of hearing the application for the appointment of a guardian, and was aware of the fact that a guardian was appointed, for he conferred with the guardian and his attorney with reference to the adjustment of the litigation in which his affairs were involved. The petition for appointment of a guardian specifically alleged, in the language of the statute, the mental incompetency of Mr. Lacroix and the order appointing a guardian adjudged him mentally incompetent. On his own application he was finally relieved from guardianship on the ground that he had regained his mental competency, and he may not now, in this proceeding, attack the validity of the appointment of the guardian.

We have considered the several points urged by counsel for Mr. Lacroix and have examined the authorities cited, and, upon this record, must affirm the action in the circuit.

Affirmed, with costs against James E. Lacroix.

FEAD, C. J., and NORTH, FELLOWS, CLARK, MC-DONALD, POTTER, and SHARPE, JJ., concurred.