# CHICAGO BANK OF COMMERCE v. McPHERSON et al.

## No. 6024.

Circuit Court of Appeals, Sixth Circuit.

Dec. 8, 1932.

G. S. Thompson, of Chicago, Ill. (Harry Olson, Altheimer & Mayer, and Ben J. Altheimer, all of Chicago, Ill., on the brief), for appellant.

L. W. Harrington, of Grand Rapids, Mich. (Norris, McPherson, Harrington & Waer, of Grand Rapids, Mich., on the brief), for appellees.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The bill attacks the validity under Michigan law of certain charitable trusts created by the will, and codicils thereto, of Charles F. Ruggles, of Manistee, Mich., who died August 21, 1930. Appellant, plaintiff below, is a citizen of Illinois, and as trustee is an assignee of certain of the heirs at law of the deceased. Appellees, defendants to the suit below, are the executors and trustees under the will, and are citizens of Michigan. The will and codicils were admitted to probate after an unsuccessful attack upon the testamentary capacity of the testator, and suit followed in the United States District Court. From a decree dismissing the bill therein this appeal was taken.

Ruggles left his entire estate to John H. Rademaker and Charles McPherson, as trustees in trust for certain purposes set forth in the will and codicils thereto. His only heirs at law and next of kin are Abbie F. Brundage, Reginald S. Ruggles, and Harry F. Ruggles, niece and nephews, all citizens of Michigan. On January 20, 1931, Abbie F. Brundage and Reginald S. Ruggles conveyed all their interest in the estate to one Arthur Bevan, and on January 24, 1931, Bevan conveyed all of the interest so acquired to appellant as trustee. Coincidentally appellant executed a declaration of trust, setting forth the beneficiaries of the trust and their respective interests in its subject-matter.

We come first upon a question of jurisdiction. It appears from the provisions of the trust agreement under which appellant holds title that its attorneys, in the event of recovery, will be entitled to a very large per cent. of the proceeds of the present litigation. This is claimed to be a violation of Michigan law prohibiting champerty, and specifically against the public policy of the state as declared by section 13593, Comp. Laws Mich. 1929, which provides that no attorney shall buy, or be in any manner interested in buying, any bond, promissory note, bill of exchange, book debt, or other thing in action, with the intent and for the purpose of bringing any suit thereon. It is clear that neither of the conveyances here involved come within the condemnation of the statute. The defense of champerty, except as governed by section 13600, Comp. Laws Mich. 1929, a section not here applicable, does not exist in Michigan. National Adjusting Ass'n v. Dallavo, 253 Mich. 239, 234 N. W. 485; Wildey v. Crane, 63 Mich. 720, 30 N. W. 327. Defendants rely upon the case of In re Vanden Bosch's Estate, 207 Mich. 89, 173 N. W. 332, which holds that donees of an heir at law do not acquire such an interest in the estate as to enable them to contest a will. Different issues, however, arise in contest over the trust provisions in a will by parties in interest than in contest over admission to probate.

Of our own motion we have given consideration to the question of jurisdiction, as affected by the United States assignment statute (Jud. Code § 24 [28 USCA § 41]) and the federal rule against declaratory judgments. We are satisfied that the appellant's assignor conveyed more than a chose in action, Brown v. Fletcher, 235 U. S. 589, 35 S. Ct. 154, 59 L. Ed. 374, that the relief here sought is such as may be pursued in a court of equity, Waterman v. Canal-Louisiana Bank, 215 U. S. 33, 30 S. Ct. 10, 54 L. Ed. 80, and that the court does not lack jurisdiction on the ground that only a declaratory decree is sought, Fidelity National Bank v. Swope, 274 U. S. 123, 47 S. Ct. 511, 71 L. Ed. 959; Traphagen v. Levy, 45 N. J.

Eq. 448, 18 A. 222.[1] We think the District Judge was right in retaining jurisdiction.

The Ruggles will was executed March 31st, 1926. Four codicils were added, the last on March 31, 1930. As will later appear, the fourth codicil is the one important to this discussion. Paragraph 2 of the will, as modified by the fourth codicil, attempted to create two trusts, the first in subparagraph (f), and the second in subparagraph (g). We are asked to declare both trusts void, and to decree that the trustees under the will hold as trustees for the Ruggles heirs at law and their assigns.

Of the trust attempted to be created in subparagraph (f) little need be said. It directs the setting aside of a fund of $100,000, which, with the income thereof, is to be used by the trustees to provide financial assistance to such friends of the testator as may be in need of relief. Any part of such fund and its accumulated income as remains undistributed after the surviving trustee has ceased to act becomes part of the residue of the estate, and if for any reason the attempted trust is invalid, then the whole of the fund becomes part of the residue, to be held in trust for the purposes named in the second trust. We follow the District Court in its ruling on the issues relating to the first trust. If the second trust is valid the appellant has no interest in the fund constituting the first trust, and the issue as to its validity need not in this controversy be determined.

The main question in the case is the validity of the trust sought to be created by subparagraph (g) of the will, as modified by paragraph 3 of the fourth codicil. Its provisions are as follows: "I direct that the provisions of my said will shall be so changed that the Trustees of the trust estate therein provided for shall have the right and power in their discretion, to disburse the principal of said trust estate, as well as the net income thereof, for such charitable, benevolent, educational and public welfare uses as said trustees shall elect, in such amounts, upon such terms and for such purposes as said trustees, without discrimination because of race, nationality, or religious belief, shall decide to be most worthy. It is my desire and intent that said trust estate and the income thereof shall be devoted to charitable, benevolent, educational and public welfare uses in the State of Michigan, and that the Trustees may in their discretion organize a Michigan corporation to hold said trust estate and dis-

[1] Berchard on Constitutionality of Declaratory Judgments, 31 Columbia Law Review 561.

burse the proceeds and income thereof for such purposes. It is my desire and intent that the reasonable needs and requirements of the inhabitants of Manistee County, and of the charitable, benevolent, educational and public welfare institutions serving the inhabitants of the said county, shall at all times be given preference over the like needs and requirements of other persons and institutions in the disbursement of said trust estate and the income thereof."

The validity of this trust is attacked upon the following grounds: (1) That its objects are so uncertain, and the beneficiaries so indefinite, that a court of equity cannot enforce its provisions, and it is therefore not within the scope of Michigan statutes validating charitable trusts; (2) that benevolent, educational, and public welfare purposes are not necessarily charitable, and that if a substantial part of the trust fund may be devoted to uses not charitable, it is not within the doctrine of charitable trusts; (3) that the discretionary powers vested in the trustees are based on personal trust and confidence, and do not pass to successors; (4) that there is no grant of power as to successors in trust, and that a court of chancery is powerless to vest them with such powers; and (5) that it would be impossible for a court of equity to compel the execution of the trust because of the unlimited powers of discretion vested in the original trustees.

The validity of the trust here attacked must be determined by the laws of Michigan. Jones v. Habersham, 107 U. S. 174, 2 S. Ct. 336, 27 L. Ed. 401; Russell v. Allen, 107 U. S. 163, 2 S. Ct. 327, 27 L. Ed. 397; Fontain v. Ravenel, 17 How. 369, 15 L. Ed. 80. And to understand the grounds upon which attack is made, it is necessary to consider the history of charitable trusts in Michigan, the sequence of legislative acts affecting them, and the decisions of the Supreme Court in relation thereto. For nearly a hundred years prior to 1907 charitable trusts were not recognized by the laws of Michigan either state or territorial, the statute of Elizabeth having been repealed in 1810, Hopkins v. Crossley, 132 Mich. 612, 96 N. W. 499, and the law of charitable uses, as recognized by English courts of chancery prior to the Statute of Elizabeth, not being followed. Stoepel v. Satterthwaite, 162 Mich. 457, 127 N.W. 673. In 1907 the Michigan Legislature passed Act No. 122, of the Public Acts of 1907. This act provided that no gift, grant, bequest, or devise to religious, educational, charitable, or benevolent uses, if in

other respects valid, should be invalid by reason of the indefiniteness or uncertainty of the persons designated as beneficiaries, or by reason of the same contravening any statute or rule against perpetuities. It also provided for the execution of trusts under the direction of a court of chancery in the event that no trustee is named in the instrument, or a vacancy occurs in the trusteeship. It must be noted that public welfare uses are not included among the objects of trusts validated by the statute. ·

· On May 18, 1915, the Legislature substituted for the act of 1907, Act No. 280, of the Public Acts of 1915. This was a much broader statute, providing that no trust for the same uses specified in the 1907 act should be invalid by reason of the indefiniteness or uncertainty of the object of the trust. The bars against invalidity because of indefiniteness or uncertainty of beneficiaries, and because of the contravening of any statute or rule against perpetuities, were retained. The 1915 act added, also, this significant language: "Every such trust shall be liberally construed by such court so that the intentions of the creator thereof shall be carried out whenever possible" (section 2); and all gifts made in pursuance of the 1907 act were validated.

The 1907 act was construed by the Michigan Supreme Court in Moore v. O'Leary, 180 Mich. 261, 146 N. W. 661, Ann. Cas. 1916A, 373, and Loomis v. Mack, 183 Mich. 674, 150 N. W. 370, 371. In the Moore Case, it was thought, though comment on the subject was not necessary to decision, that the rule in New York as applied to a similar statute, should be followed. There it had been expressly held, Matter of Shattuck, 193 N. Y. 446, 86 N. E. 455, that it was not the purpose of the New York act to preserve gifts to private institutions or individuals, and that if the terms used do not necessarily describe a public or charitable institution within the meaning of the act, the trust is void. In the Loomis Case, a question of the sufficiency of the title to the act under the Michigan Constitution was involved. The opinion denying validity which, however, did not prevail, because an equal number of justices affirmed a holding of validity by the court below, is urged upon us as confirmatory of the view expressed in the Moore Case. It is true that Mr. Justice Ostrander commented on the fact that Michigan has "no body of rules, no affirmation or exercise of power in the equity courts to administer charitable trusts." But clearly he had reference to the state of the law prior to the passage of the 1907 act, for his attack on the sufficiency of its title indicates his opinion of its purpose: "If, then, the object of the statute now before us is, *as it appears to be*, to overturn a long settled state policy * * * the advertisement of such an object ought to be clear."

Whatever doubt may have been cast by Mr. Justice Ostrander's opinions upon the intention of the Legislature to validate indefinite charitable trusts was completely resolved when the Supreme Court came to consider the broader provisions of the 1915 act: "This is significant at least as showing the changed policy of the state upon the subject as expressed by the Legislature. Act No. 122, Pub. Acts 1907, until repealed by the broader act of 1915, laid down a new policy, which has been followed for more than 10 years." In re Brown's Estate, 198 Mich. 544, 165 N. W. 929, 935, an opinion in which Mr. Justice Ostrander concurred. In Appeal of Hannan, 227 Mich. 569, 199 N. W. 423, the court, without citing the statutes, but having them necessarily in mind, considered the cy pres doctrine to be operative in Michigan, a conclusion specifically expressed in relation to the 1907 and 1915 acts by one of the concurring justices in Scudder v. Security Trust Co., 238 Mich. 318, 213 N. W. 131. The mandate of the Legislature that the 1915 act be liberally construed was given implicit observance in the holding that playgrounds for children came within the meaning of the term "educational." Greenman v. Phillips, 241 Mich. 464, 217 N. W. 1.

It seems to us, therefore, that there would be little difficulty in holding the second Ruggles trust valid were it not that in 1925 the Michigan Legislature passed the act now incorporated in sections 13516 and 13517, Comp. Laws Mich. 1929, upon which appellant's principal argument is based, and which clearness requires be recited:

"Section 1. No statutory or common law rule of this state against perpetuities or restraint of alienation shall hereafter invalidate any gift, grant, devise or bequest, in trust or otherwise, for public welfare purposes.

"Sec. 2. Public welfare purposes are defined to be all lawful purposes beneficial to the public as a whole."

It is argued from this that the 1925 act relates solely to trusts for public welfare purposes; that it shows a definite intention of the Legislature to place such trusts in a class

by themselves, and entirely separate and apart from trusts for religious, educational, charitable, or benevolent uses; that trusts for such uses having been given validity by the 1907 and 1915 acts, and having no validity except by virtue of these statutes, it follows that the common-law rule requiring definiteness of beneficiaries and certainty of objects is still in force in Michigan so far as concerns trusts for public welfare uses, and that the only relaxing of the strict requirements of the common law with respect to such trusts is their exemption from the operation of the rule against perpetuities; that inasmuch as the Legislature has defined public welfare purposes as "all lawful purposes beneficial to the public as a whole," the trustees would be permitted under the will to devote all or any part of the trust estate to a purpose which is neither religious, educational, charitable, or benevolent, and that this clause renders the entire trust void. Were we to concede the premise that the second Ruggles trust does not bind the trustees to devote the entire trust estate to charitable uses, it might perhaps follow, though this we do not decide, that the numerous authorities cited by appellant which substantially follow the holding of the English High Court of Chancery in the leading case of Morice v. Bishop of Durham, 9 Vesey Jr. 399, would compel us to hold the present attack upon the trust here involved as completely destructive, for the rule indicated by those authorities is to the effect that if trustees *may* devote the trust funds to charity, but are not *bound* to do so, the trust is void. We are unable, however, to accept counsel's premise.

It seems to us that they have built the whole fabric of their argument upon a fallacy. We are called upon to construe the intention of the testator in the Ruggles will. In his fourth codicil Ruggles added to the specific objects of the trust set forth in the original will, which were charitable, benevolent, and educational uses, "public welfare uses." Upon the circumstance and nothing more that the Legislature had in 1925 defined public welfare uses broadly enough to cover uses which are not charitable, it is now urged as conclusive that the connotation of the phrase in the will is identical with that of the phrase in the statute. This does not, necessarily, follow. Nothing is better settled than that the law strives to uphold testamentary dispositions of property wherever it can, and that no matter what words are used by the testator to express his intention, or in what peculiar or technical language he ex-

presses it, courts will give effect to it as it may be gathered from the entire will.

It seems clear that Ruggles originally intended a charitable trust in its broadest sense, and that the addition of public welfare uses to its objects indicated no change in purpose. As was said by the Court of Appeals of the Eighth Circuit in passing upon a sequence of descriptive words of similar import to those, in the disposition here involved: "The word 'charitable' is the dominant word, coloring and conditioning those which follow, and that an overriding charitable intent is disclosed." Gossett v. Swinney, 53 F.(2d) 772, 778, an application of the maxim noscitur a sociis. It seems to us not insignificant that the testator here declared: "It is my desire and intent that the reasonable *needs* and *requirements* of the inhabitants of Manistee County, and of the charitable, benevolent, educational and public welfare *institutions,* shall at all times be given preference over the like needs and requirements of other persons and institutions." This, in the environment in which it is used, is language clearly indicative of a charitable purpose, and one public rather than private in its scope. Moreover, the trustees are directed to disburse the trust fund for such purposes as they shall decide to be most worthy. Here again in the language of public benefaction. Nor must the omission by the testator of religious uses be lost sight of—certainly a use within the broad definition of the statute. Finally, consideration must be given to conditions existing at the time the codicil was drawn. Great economic distress was already upon us on March 31, 1930. The term "public welfare" had come, in the popular mind, to be synonymous with public charity, and to signify some form of direct relief to that portion of the public affected by the dislocation of industry and the spread of unemployment. It was a time of organization for public welfare commissions —for solicitation of public welfare funds. Private individuals, communities, municipalities, states, even the Federal government, were being importuned for contributions and appropriations for public welfare purposes. We think it clear, having in mind all of the considerations enumerated, and being guided by the rule that we must give effect to the testator's intention if it can be ascertained, that the Ruggles will discloses an intention to devote the entire estate to charitable uses in the broadest sense, and that there is entirely absent any indication of a purpose either to direct or to permit the trust funds to be used for a private purpose or a public purpose not charitable.

398

In considering other grounds for attack upon the validity of the trust, we need add little to the comment of the District Judge. The state of Michigan, after following a settled policy for nearly a century in denying validity to charitable trusts, completely reversed that policy, and upon each occasion broadened the scope of its legislation, until it is now the settled policy of the state expressly declared in its law to interpret them liberally. Zollman, American Law of Charities, § 61. Charitable trusts are of necessity indefinite and uncertain in respect to beneficiaries, and the modern view is that certainty of objects and too great a limitation upon the discretionary powers of trustees more often tends to defeat the dominant charitable purpose of the testator than to effectuate it. Objects of private beneficence in one generation may no longer require a testator's bounty in the next, and classes of beneficiaries in normal times tend to disappear.[2] Michigan has adopted an enlightened, forward looking view. It ought not lightly to be ignored in the face of the express declaration of its Legislature and the decisions of its courts.

We are not impressed by the argument that the testator did not intend to vest discretionary powers in successor trustees. His specific expression of confidence in those named in the will adds nothing to the confidence that is necessarily implied from their very appointment. Moreover, the testator expressly provided for succession, and permitted the organization by his trustees of a corporation to carry out the purposes of the trust. His intention in that respect is clear.

It follows from what we have said that the decree of the District Court is affirmed.

---

[2] Zollman, American Law of Charities, §§ 387, 388 (1924); "Principles of Public Giving," by late Julius Rosenwald, 143 Atl. Mo. 599 (May, 1929); "The Trend Away from Perpetuities," by same author, 146 Atl. Mo. 741 (Dec. 1930).