*In re* MARXHAUSEN'S ESTATE.

1. INFANTS—PROBATE COURT MAY APPROVE SETTLEMENT BINDING ON MINOR'S ESTATE.

Under Act No. 249, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 13818 [4] *et seq.*), probate judge has general authority to approve settlement among heirs, with binding effect upon the estate of a minor.

2. SAME—APPROVAL OF SETTLEMENT—STATUTES.

While probate judge should not approve as of course upon guardian's consent compromise among heirs affecting minor's estate, but should investigate in order to make judicial determination of essentials of settlement, the statute does not require that testimony be taken in proceeding for settlement; finding necessary for approval being of substance rather than form and based upon acquaintance with the situation rather than upon whether witnesses are sworn.

3. EVIDENCE—PROBATE COURTS—JUDICIAL NOTICE.

Probate court takes judicial notice of its own files.

4. CERTIORARI—ORDER OF APPROVAL OF SETTLEMENT NOT REVIEWABLE BY CERTIORARI.

Where probate court exercised sound discretion in approving settlement among heirs affecting minor's estate, from which no appeal was taken or fraud shown, order of approval is not reviewable by certiorari.

5. EXECUTORS AND ADMINISTRATORS—JURISDICTION OF PROBATE
   COURT TO AUTHORIZE SETTLEMENT OF CASE PENDING IN CIRCUIT.
   Contention that probate court had no jurisdiction to authorize
   executor to make settlement of case pending in circuit court
   is untenable.

Error to Wayne; Miller (Guy A.), J. Submitted April 17, 1929. (Docket No. 131, Calendar No. 34,282.) Decided June 3, 1929. Rehearing denied September 4, 1929.

Certiorari proceedings by Christian Frederick, administrator of the estate of Erna Marxhausen Frederick and guardian of the estate of Pompey Marxhausen Frederick, to review the order of Henry S. Hulbert, probate judge of Wayne county, denying petition to set aside orders of approval and confirmation of a settlement agreement in the estate of August Marxhausen. From judgment dismissing writ of certiorari, petitioner brings error. Affirmed.

*Charles R. Fox* and *Don M. Harlan,* for appellant.

*George E. Brand,* for appellee.

FEAD, J. This is review, by writ of error, of judgment of the circuit court dismissing writ of certiorari, issued to Henry S. Hulbert, probate judge of Wayne county, to review his order denying appellant's petition to set aside orders of approval and confirmation of a settlement agreement in the estate of August Marxhausen, and to vacate the orders subsequent thereto, including an order assigning residue, and to reopen the estate.

August Marxhausen died testate in 1920, leaving three adult children, Erna, Curt, and Thelma, and a divorced wife, Laura. The estate consisted of:

1. Half interest in Broadway avenue property, Detroit, with a long lease thereon, appraised at

$150,000, left in trust for the lives of Elsa Schantz and Erna, 40 per cent. of net income to Erna and 20 per cent. each to Curt, Thelma, and Elsa, with division of Elsa's share among the others on her death. Elsa died in a short time and no claim is made in her behalf.

2. Calf Island, $65,000, devised to the three children equally.

3. Daily Abend Post Publishing Company stock, $36,000, in trust for lives of Erna and Thelma, net income to be divided equally among the children.

4. 450 shares common and 100 shares preferred stock of Broadway Market Company, $950, other personalty, $1,099.25, and cash $3,510.97.

5. The proved debts against the estate were $54,200.

Erna married appellant, Frederick, and died November 25, 1924, leaving a son, Pompey, the only minor interested in the estate. In 1925 Frederick was appointed administrator of Erna's estate and guardian of Pompey's. Frederick took an active interest in the administration of the Marxhausen estate, filing several petitions other than those hereafter referred to.

Advances were made to the children from time to time, Erna receiving $4,631.60, Thelma $3,400, and Curt $400.

Calf Island is a summer home. For a time, Erna, Curt, and Thelma occupied it at will. Later dissension arose and Erna objected to its use by the others. An attempt to arrange occupancy was unsuccessful, and on July 24, 1924, at Erna's suggestion, the executor notified Curt and Thelma to vacate or they would be charged $540 per month rent. They did not reply, but occupied the premises about three months each season in 1925, 1926, and 1927.

In the decree of divorce, testator was ordered to deliver to Laura 400 shares of Broadway Market Company common stock. He did not do so. In 1922 the executor, in ignorance of the decree, sold the stock, 450 shares of common and 100 preferred, for $2,100, with consent of Erna, Curt, and Thelma. In 1925 Laura commenced suit in the Wayne circuit court against the executor, claiming ownership of 400 shares, charging conversion, and asked $30,000 damages on the contention that the executor must comply with the decree or pay the value at the time of attempted compliance. The probate judge returned that at the date of the settlement it was doubtful whether the stock could be obtained at $30 per share. Trial of the suit was imminent when the settlement was made.

November 26, 1926, Frederick, as administrator of Erna's estate, filed a petition claiming that between the death of testator and the death of Erna the total net income of the Broadway property was over $45,000, that it was a trust fund, $21,000 belonged to Erna's estate, and asked that such amount, less advances, be paid to him as her administrator. Curt and Thelma answered, and their position was that the trust had not become operative because no trustee had qualified and the income was necessarily and properly used by the executor to pay debts and expenses, the other personal property, aside from the stock bequeathed in trust, being insufficient therefor. On the same, day, Frederick, as administrator and guardian, filed a petition praying that the executor be ordered to bring action against Curt and Thelma to collect rent for Calf Island. He filed a third petition asking that the estate be distributed and closed. Curt and Thelma filed answers denying liability for rent. Negotiations for settlement were

had between attorneys for Frederick and attorneys for Curt and Thelma from time to time, in the course of which Frederick changed attorneys three times. December 26, 1926, the executor's second account was allowed. June 30, 1927, the executor filed a petition for leave to settle Laura's claim, setting up the facts concerning it, to equalize advances to the children, for determination of Frederick's petitions, and general instructions. Frederick did not answer this petition until December 1st, at which time he included in his answer a cross petition charging Curt, Thelma, and Laura with conspiracy to defraud Pompey, the executor with fraudulent mishandling and mispayment of funds, and asked that the allowance of the former accounts be set aside and the executor be charged as trustee as well as executor.

July 29th, the four pending petitions were brought on before the court and counsel for all parties were heard at length. The matters were adjourned from time to time and were further heard in open court on November 1, 1927, with all parties and their counsel present; on December 1st, in presence of all parties and their counsel, the questions involved being argued at length; and December 15th, all parties and their counsel in court, at which time an order equalizing advances was made and the sums owing made a lien against the estates of the children respectively.

December 22d, the executor filed his fourth account and prayed for specific instructions. He set up at length the controversy over the occupancy of Calf Island, and gave his opinion that the place could not be rented except to heirs, that it had no other rental value, and that Curt and Thelma should not be charged anything for their occupancy; set up Laura's claim and the condition of the suit, and

asked leave to withhold such sum to pay it as the court should determine. This petition was answered by Frederick, Curt, and Thelma.

January 30th, hearing on executor's third and fourth accounts was continued to February 8th, to which date the other matters had been adjourned to give the parties an opportunity to effect a settlement which counsel for all of them, in the presence of Frederick, had informed the court was in progress.

Between December 15th and February 8th, the court had a long conference with Frederick, in which the controversies and the affairs of the estate of Erna and Pompey were discussed at length. February 8th, all parties were present in court, personally and by counsel. Frederick's attorney presented to the court an agreement of settlement, then signed by Curt, Thelma, and Laura. On petition of all parties, Frederick signing three times as administrator and guardian and acknowledging it before a notary, an order was entered authorizing the executor and Frederick, in both capacities, to execute the instrument. They signed in open court, an order confirming the agreement was made, and the instrument filed.

The agreement provided:

(a) That Erna, Curt, and Thelma and their representatives be discharged from obligation to repay the advances made or to be made under the order of December 15th.

(b) That the trust in the Broadway property never became effective and any balance of income collected by the executor be divided equally among the heirs.

(c) That Curt and Thelma pay $1,000 for occupancy of Calf Island and Erna's estate pay nothing.

(d) That the executor settle Laura's suit for $6,500.

(e) That the real estate be relieved of liens for contributions and Calf Island and the residue of the estate, except the Abend Post stock, be divided equally among the heirs.

On February 18th, counsel stipulated in open court, in the presence of Frederick, the amount of the executor's and his attorney's fees. On the same day an order assigning the estate, including over $15,000 in cash, was made. The cash was divided among the heirs and the Abend Post stock delivered to the trustee. Some miscellaneous personalty was left, and on petition of Frederick as administrator, consented to by Frederick as guardian, that it was hard to divide, he was authorized to release it to Curt and Thelma for $175 and certain keepsakes.

On April 14th, final account of the executor, approved by counsel for all the parties, was allowed, his bond canceled and his letters discharged.

No appeal was taken from these orders nor further action had until October 20, 1928, when Frederick, as administrator and guardian, filed the petition to set aside the settlement and subsequent proceedings. In his petition he made claim of fraud in the settlement, but made no showing to substantiate it.

Appellant contends that the approval of settlement by the probate judge was without jurisdiction because (a) no testimony was taken at the hearing on settlement, (b) the settlement was not fair and reasonable to the minor, and (c) the probate court could not authorize settlement of a suit pending in circuit court.

The probate judge had general authority to approve the settlement, with binding effect upon the estate of a minor. *Metzner* v. *Newman,* 224 Mich.

324 (33 A. L. R. 98); Act No. 249, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 13818 [4] *et seq.*). The statute requires, as a condition of approval, that the court find: (a) The contest or controversy is in good faith, and (b) the effect on the estate of the minor is just and reasonable. This means that the court shall not approve a compromise as of course upon consent of the guardian, but shall investigate in order to make a judicial determination of the essentials of settlement. *Palazzolo* v. *Judge of Superior Court,* 234 Mich. 547; *Dudex* v. *Sterling Brick Co.,* 237 Mich. 470. The statute, however, does not require that testimony be taken in a proceeding for settlement. If the court is otherwise uninformed, it may be necessary. But a probate court takes judicial notice of its own files. *Wilkinson* v. *Conaty,* 65 Mich. 614. And in the course of administration of an estate, in the consideration of the large number of petitions incident thereto and making orders thereon, in the examination of claims and accounts, in the general conduct of the estate and advising and directing the administrator or executor, a judge of probate may, and usually does, obtain an intimate knowledge of the estate and is able to determine a policy without the necessity of direct testimony. The finding necessary for approval of settlement is one of substance, not of form, and is to be based upon acquaintance with the situation rather than upon whether witnesses are sworn.

From the host of verified petitions, answers, accounts, and reports, the many arguments and discussions with counsel, and conferences with appellant, the probate judge must necessarily have become acquainted with the issues. He returned that he knew the facts. The matters of the trust fund and the liability of the estate to Laura and its extent were essentially questions of law upon which no tes-

timony was necessary. The issues would be developed by arguments of counsel. The opinion of the executor that Calf Island had no rental value was not disputed by any direct averment. From official sources and hearings, the probate judge was put in possession of the facts to properly exercise jurisdiction and make the judicial determination required by statute. There was neither apparent nor shown the necessity for testimony to acquaint him with material facts which he did not have before·him.

The contests against appellant's claims were made in as good faith as the claims themselves. The legal questions were at least so serious and doubtful that after long consideration and negotiation the guardian and his counsel deemed settlement advisable. The court might well have been impressed, from appellant's activities, his litigious attitude, and the character of his charges against the others, that he would not consent to a settlement which was not just to his ward. Failure to approve settlement would have resulted in long delay in closing the estate and extensive and costly litigation. From the whole situation, it is apparent that the probate judge exercised sound discretion in approving the settlement. In any event, having properly exercised jurisdiction, no appeal having been taken nor fraud in the settlement shown, the order of approval is not reviewable in this proceeding.

Appellant's contention that the probate court had no jurisdiction to authorize the executor to make settlement of the case pending in the circuit court is untenable. *In re Hannan's Estate,* 227 Mich. 569.

Judgment is affirmed, with costs.

NORTH, C. J., and FELLOWS, WIEST, CLARK, MCDONALD, POTTER, and SHARPE, JJ., concurred.