## IN THE MATTER OF THE PROBATE OF THE ALLEGED WILL OF FANNIE LISS, DECEASED.

Superior Court of New Jersey
Law Division Hudson County

Decided December 1, 1981.

186

*Robert S. Persky*, as executor and attorney for the estate (*Persky, Jones & Persky*, attorneys).

*Robert B. Smith* for defendant Sylvia Farber (*Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney*, attorneys).

*Edward Dauber* for defendant Yeshiva Beth Medrash Govoha (*Greenberg, Dauber & Epstein*, attorneys).

*Samuel M. Krieger* for defendants Yeshiva Rabbi Jacob Joseph, Mirer Yeshiva Central Institute, Beth Medrash Elyon, Yeshiva Torah Vodatis, Diskin Orphan House of Israel, Nitra Yeshiva of Mount Kisco, and United Jewish Appeal, Inc.

*Jacob Siegal* for defendant Jewish Hospital and Rehabilitation Center of New Jersey.

*Deanne Wilson Plank* for defendant American Red Magen David for Israel (*Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan*, attorneys).

Eugene Farber, defendant, pro se.

*Mark I. Siman*, Deputy Attorney General, for the State (*James R. Zazzali*, Attorney General, attorney).

COBURN, J. S. C.

This matter is before the court on the application of successors to the estate of Fannie Liss for an order directing the executor to abide by the terms of a written agreement altering their interests under her alleged will. Certain of the successors are charitable associations, consequently the court ordered service of all relevant papers to be made on the Attorney General who has

affirmed that the settlement serves the public interest. The only objector is the executor of the Fannie Liss Estate. Since his position cannot be justified, the court will approve the agreement and order the executor to abide by its terms.

Numerous proceedings have occurred in this complex litigation. For present purposes, no more than a brief outline is in order. However, it is appropriate that reference be made to the related litigation pending before this court arising from the probate of the estate of Fannie Liss' husband Morris Liss because a settlement of this matter will also bring that case to a conclusion.

Morris Liss died in 1966, survived by his wife and their two children Sylvia Farber and Irving Liss. He left an estate worth approximately $500,000. Under his will Fannie Liss was to receive during her life the income of the residuary estate. She was also granted a power of appointment with respect to one-half of the residuary estate.

Fannie Liss died in 1980 at the age of 80, and on June 27, 1980 her executor obtained an *ex parte* judgment of the Hudson County Surrogate's Court admitting to probate a document, which he had drafted, purporting to be her last will. The estate consists primarily, if not entirely, of assets originating from the trusts established by her husband's will. The alleged will was executed when Fannie Liss was 76 years old; it provides extremely minor bequests to family members, with the bulk of the estate going to 11 charities.

On September 26, 1980, within the applicable three-month limitation of *R.* 4:80-7, attorneys for Sylvia Farber filed a complaint in this court challenging the validity of the Fannie Liss will on numerous grounds, including lack of testamentary capacity. In support of the complaint Sylvia Farber certified that during the 18 years prior to her death Fannie Liss resided with the Farber family; that before she executed the will her physical and mental condition had severely deteriorated; that she could not read English and for the most part communicated

in Yiddish; that throughout her life all financial matters were handled by her husband and after his death by Sylvia Farber, and that she had no understanding of the size of her estate.

On October 17, 1980, a date beyond the three months allowed by the rule, attorneys for Sylvia Farber obtained in the same action an order to show cause further attacking the June 27, 1980 judgment of the Hudson County Surrogate. On December 18, 1980 the judge before whom the matter was then pending inscribed this legend on the face of the show cause order: "N.B. Complaint on order to show cause dismissed for lack of prosecution *without prejudice* and without costs." (Emphasis supplied.) Nothing was written on the complaint and the executor failed to prepare a formal order. At the time settlement discussions were ongoing and the judge, who was about to retire, had informally expressed to counsel his desire to "clear his calendar."

This court first became involved in these related actions on May 22, 1981, when trustees of the Morris Liss estate, an attorney and Sylvia Farber, asked for approval of their proposed final account. The executor of the Fannie Liss estate, appearing in opposition, filed exceptions to the account and sought to reopen two prior accounts. In a written opinion this court ruled that the executor had made a sufficient showing to permit discovery with respect to the prior accounts, but that a final determination on whether those accounts should be modified would have to follow a plenary hearing.

Thereafter an amended complaint and order to show cause was filed on behalf of Sylvia Farber and others in the Fannie Liss estate. The executor's answer acknowledged his possession of and claim on behalf of the estate to over $100,000 in joint bank accounts which list either Sylvia Farber or her children as beneficiaries of Fannie Liss. On September 18, 1981 the executor moved to dismiss the challenge to the judgment admitting Fannie Liss' will to probate on the ground that it was time-barred by *R.* 4:80–7. At that hearing attorneys representing the

charities and others reported to the court that a settlement had been reached. Consequently, the court reserved decision on the executor's motion and urged the interested parties to submit a written agreement within 30 days. The executor expressed adamant opposition to any compromise of the litigation.

On October 23, 1981 a proposed order of settlement, signed by all the affected successors and constituting their agreement, was submitted to the court. The court modified the order to provide for service upon the executor and the Attorney General, with provision allowing time for either to object. The Attorney General responded as follows:

> After an extensive review of all the papers submitted, our office is satisfied that the settlement is in the best interest of the charities since there is a substantial chance that they would lose the will contest. Furthermore, the amount of the settlement appears to be very reasonable in view of the questions involving the Totten trusts and in view of the nature of the estate assets, which largely consist of two mortgages with relatively low interest payments.

The executor objected and the parties gathered in court once again, at which time it became clear after extensive argument that the executor was not yet prepared to set forth any substantive grounds for opposing the settlement. Thereafter, he availed himself of a second opportunity to file written objections. These are addressed below, together with the successors' argument that the executor lacks standing to oppose their amicable resolution of this case.

*In re Seabrook*, 90 *N.J.Super.* 553 (Ch.Div.1966), held that a court may approve the compromise of a will contest over the objection of executors and trustees. *Seabrook* arose at a time when the only statutory authority for judicial approval of the compromise of a will case was contained in *N.J.S.A.* 3A:14–1 *et seq.* That legislation recognized the power of the fiduciary to compromise claims in good faith or to submit proposed written compromises for court approval. In adopting the 1977 probate code amendments the Legislature clarified and strengthened the position of successors who want to settle a will contest. Thus, *N.J.S.A.* 3A:2A–81 * provides in pertinent part:

* Reenacted as *N.J.S.A.* 3B:23–9.

Subject to the rights of creditors and taxing authorities, competent successors may agree among themselves to alter the interests, shares, or amounts to which they are entitled under the will of the decedent, or under the laws of intestacy, in any way that they provide in a written contract executed by all who are affected by its provisions. *The personal representative shall abide by the terms of the agreement* subject to his obligation to administer the estate for the benefit of creditors, to pay all taxes and costs of administration, and to carry out the responsibilities of his office for the benefit of any successors of the decedent who are not parties. [Emphasis supplied].

■ The question of the executor's standing in these proceedings must be considered in light of this legislation. It is evident that he may appear to protect the interest of creditors, taxing authorities and successors who are not parties to the agreement, and to insure that the costs of administration are paid. However, since there is no suggestion that the proposed agreement fails to protect those interests and since in fact all such interests are fully protected, it is equally evident that the executor is not an aggrieved party, and that he has no standing to resist the interested parties' wish to settle this will contest. *In re Rogers,* 15 *N.J.Super.* 189, 200–201 (Cty.Ct.1951). Perhaps it should be noted that notwithstanding the new statute, once the will has passed the full ordeal of probate a personal representative faced with an agreement that complies with the statute but violates the testator's intent may have greater standing. *Heritage Bank-North, N.A. v. Hunterdon Med. Center,* 164 *N.J.Super.* 33 (App.Div.1978).

■ In response to the attack upon his standing the executor contends that *N.J.S.A.* 3A:2A–81 is not binding upon him because the charitable beneficiaries do not come within the statutory category of "competent" successors. Of course, it is clear under *Seabrook, supra,* that whatever the capacity of the charities, the court certainly has the power to order the executor to carry out the agreement. However, this court is also satisfied that charities are "competent" successors whose agreement resolving a will contest must be carried out by the executor so long as it is not violative of this section and no objection is made by the Attorney General. Charitable corporations are empow-

ered to litigate and exercise any corporate powers incidental thereto. *N.J.S.A.* 15:1-1. In this respect their situation is completely dissimilar from that of minors or incompetents whose interests must be protected by guardians. *N.J.S.A.* 3A:14-3. That the Attorney General must be noticed in such proceedings (*R.* 4:28-4(b), *R.* 4:80-8) and may appear if he deems it appropriate does not mean that the charities are incompetent. It merely reflects a value judgment made by our society that in matters involving charities the Attorney General should have the power to intervene as protector of the public interest. *Fidelity Union Trust Co. v. Ackerman*, 18 *N.J.Super.* 314, 326 (Ch.Div.1952).

Thus, when faced in a will contest with an agreement which complies in all respects with *N.J.S.A.* 3A:2A-81, decedent's personal representatives should abide thereby, or, at most, in a nonadversarial manner, present the agreement for court approval if he desires the additional personal protection afforded by *N.J.S.A.* 3A:14-4.

Next, the executor argues that the settlement should be rejected because the attack upon the Fannie Liss will was out of time. *R.* 4:80-7, with certain exceptions not relevant here, requires that a surrogate's *ex parte* judgment of probate must be attacked within three months of its entry by a motion for an order to show cause. Contrary to the rule, Sylvia Farber commenced her action by complaint and did not obtain an order to show cause in that proceeding until after the three months had elapsed. Still later, as previously noted, the judge before whom the matter was pending wrote on the show cause order that it was dismissed without prejudice. At that time a dismissal without prejudice was technically impossible. It appears that the judge was about to retire and wanted to "clear his calendar." To the extent that his intent can be gleaned from the words he wrote, it must be assumed that he did not intend to adversely affect Sylvia Farber's rights. The executor should not be heard to complain with respect to this interpretation since at the time he failed to prepare and have executed a

formal order on the point. In any case, it is clear from the affidavits before this court that all the technical arguments raised by the executor could not be properly decided without a testimonial hearing. Surely it is not appropriate that this court force the parties to expend their funds on these technical points on which the executor is likely to lose. As the court said in *Tumarkin v. Friedman*, 17 *N.J.Super.* 20 (App.Div.1951):

> Procedural rules should not in themselves be the source of any extensive litigation; they should be subordinated to their true role, i.e., simply a means to the end of obtaining just and expeditious determinations between the parties on the ultimate merits. [at 26]

*See*, to the same effect, *In re Watson*, 35 *N.J.* 402, 408 (1961). Furthermore, it is inferrable from *N.J.S.A.* 3A:2A–46 that the successors to a solvent estate "may waive any defense of limitations available to the estate." The agreement under review implicitly reflects such a waiver.

The executor further contends that this court may not approve the settlement without affording him the opportunity of presenting testimony on such issues as the testamentary capacity of Fannie Liss, the creation and legal effect of the joint bank accounts and the propriety of the accounting in the Morris Liss estate. If such a hearing were granted, the successors would be entitled to a hearing on a number of related issues. Both sides have indicated that well over 25 witnesses would be needed.

Nothing in our Probate Code requires a plenary hearing in these circumstances. Nor is there any New Jersey case which holds that such a hearing is necessary. In *In re Marxhausen's Estate*, 247 *Mich.* 192, 225 *N.W.* 632 (Sup.Ct.1929), the court, in the context of reviewing its probate code, observed in this regard:

> The statute, however, does not require that testimony be taken in a proceeding for settlement. If the court is otherwise uninformed it may be necessary. But a probate court takes judicial notice of its own files. (citation omitted.) And in the course of administration of an estate, in the consideration of the large number of petitions incident thereto and making orders thereon, in the examination of claims and accounts in the general conduct of the estate and advising and directing the administrator or executor, a judge of probate may, and usually

does, obtain an intimate knowledge of the estate and is able to determine a policy without the necessity of direct testimony. The finding necessary for approval of settlement is one of substance, not of form, and is to be based upon acquaintance with the situation rather than upon whether witnesses are sworn. [225 *N.W.* at 634]

Indeed, it has properly been noted that "in almost every case [involving court approval of the settlement of an estate litigation] the taking of testimony is unnecessary ...." *In re White's Estate,* 182 *Misc.* 223, 46 *N.Y.S.*2d 917, 928 (Surr.Ct. 1943).

There are a number of complex factual and legal issues which have arisen in this matter. This court is sufficiently familiar with the various contentions from the pleadings, certifications and briefs to be able to say that the ultimate outcome is in substantial doubt. A hearing limited in scope would not aid the court and a plenary hearing is precisely the event which a settlement is intended to avoid.

Although the court is not bound to accept the Attorney General's view of the proposed settlement, *In re Reeder's Estate,* 380 *Mich.* 665, 158 *N.W.*2d 451 (Sup.Ct.1968), his position is entitled to great respect. *Seabrook, supra,* 90 *N.J.Super.* at 564. In this case his analysis is sound and his conclusion is entirely correct. In light of the circumstances this court should not invoke its "extraordinary power of declining to enforce the fairly executed settlement agreement of the [interested] parties ...." *DeCaro v. DeCaro,* 13 *N.J.* 36, 45 (1953).

In criticizing the financial merits of the settlement the executor has complained only with regard to the amounts to be received by the ten residuary successors, all being charitable associations entitled to an equal share under the will. They are each to receive pursuant to the agreement $22,000 before December 31, 1981.

The executor claims that under the will a little over $400,000 would be available to the ten charities. However, to reach that amount he includes approximately $100,000 contained in the joint bank accounts, title to which is in issue in this case.

Further, he makes no deduction for attorneys' fees and disbursements. In this regard it may be noted that the executor has employed the services of an accountant as well as his own law firm. Lastly, he includes Fannie Liss' interest in two mortgages held in the estate of Morris Liss. The present balance of those 8½% mortgages is approximately $340,000, and both probably will be renewed by the mortgagors for an additional five years because of their highly favorable terms. Thus, the executor's suggestion that the charities are in a position to obtain at this time close to $40,000 each is factually unsupportable. Under the compromise agreement each of the ten charities is to receive $22,000 now. If this litigation is permitted to continue, they may lose and never receive anything or win and find that in victory their net recovery is less than what is definitely available at this time.

The terms set forth in the "Order of Settlement," dated October 23, 1981, are hereby approved. The time limitations set forth therein shall control and shall run from the date of this opinion.