ETHEL M. WARDA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Warda v. Commissioner
Docket No. 23134-89
United States Tax Court
T.C. Memo 1992-43; 1992 Tax Ct. Memo LEXIS 49; 63 T.C.M. (CCH) 1894; T.C.M. (RIA) 92043; January 22, 1992, Filed *49 Decision will be entered under Rule 155. Peter J. Johnson and Jay L. Schultz, for petitioner. James F. Mauro and Tanya M. Marcum, for respondent. JACOBS, Judge. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined the following deficiencies in and additions to petitioner's Federal gift tax: Additions to Tax
Tax Period Ending
Deficiency
Sec. 6651(a)(1) 12/31/68
$ 17,550
$ 4,388
6/30/79
81,780
20,445
6/30/80
57,190
14,298
12/31/82
67,744
16,936
12/31/83
118,297
29,574
All section references are to the Internal Revenue Code as amended and in effect for the tax periods in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the only remaining dispute concerns the proper characterization of transfers of farm properties located in Berrien and Cass Counties, Michigan, from Ethel M. Warda (petitioner) to her son and daughter-in-law, Henry J. and Jeanette Warda (Henry and Jeanette). Respondent contends said transfers were taxable gifts. Petitioner contends said transfers were either nontaxable distributions of corpus from a constructive trust or were sales. If we find *50 that said transfers were taxable gifts, then we must further determine: (1) The dates the gifts were made; (2) the fair market value of the properties transferred on the date of donation; and (3) whether petitioner is liable for additions to tax for failure to file Federal gift tax returns. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Ethel M. Warda resided in Berrien Springs, Michigan, at the time she filed her petition in this case. She did not file Federal gift tax returns for any of the tax periods in issue. Background
Petitioner's father, William H. Matthews, died testate on July 1, 1953. Following William H. Matthews' death, petitioner and her stepmother asserted competing claims to his estate. Petitioner, her stepmother, and A. J. Warda (petitioner's husband), as guardian of Henry, then a minor, settled their dispute on August 4, 1953. Based on this settlement, the Probate Court for the County of Berrien, Michigan, awarded petitioner the entire residuary estate of William H. Matthews, which included the properties at issue herein. *51 [1]
Petitioner grew up on the farm properties she inherited and worked the land from an early age. She was later joined in this endeavor by her husband and Henry. In 1960, following petitioner's separation from her husband, Henry took over the management of the farm at petitioner's request. In 1961, Henry, Jeanette, and their children moved into the main farm house, and petitioner moved to a smaller house on the farm. At such time, petitioner's involvement in the day-to-day farm operations diminished. She continued, however, to receive a share of the crop proceeds as well as additional support from Henry and Jeanette. Transfer of the Properties
On February 28, 1962, petitioner entered into a written contract with Henry and Jeanette *52 (the 1962 contract) for the sale of the property on which she resided (home farm property); the 1962 contract was never recorded. The stated consideration for the property was $ 26,000: $ 1,000 down, and the $ 25,000 balance to be paid "$ 3,000 or more annually - $ 1,500 October 1, 1962, $ 1,500 April 1, 1963. Payable semiannually each and every year, interest at 4% being included in said payments." The 1962 contract has a "payment record" on its last page. This record reflects payment of the $ 1,000 down payment, a $ 3,000 payment on May 26, 1963, and a $ 3,000 payment on April 1, 1964. Petitioner signed each notation of these payments. No other payments are reflected in the payment record. Although the 1962 contract was signed in 1962, the deed to the home farm property was executed and recorded on December 2, 1968. Within a few months after entering into the 1962 contract, petitioner and Henry purportedly entered into oral contracts (the purported oral contracts) with regard to five other properties owned by petitioner. The deeds to these properties were executed and recorded in 1979 (twice), 1980, 1982, and 1983, respectively (the 1979, 1980, 1982, and 1983 properties). *53 Petitioner asserts that the total price for all five properties was $ 35,000 and that payment was to to be made from the proceeds generated from the sale of the crops raised on the properties. No evidence of payment was introduced. Petitioner paid property taxes with respect to each property until the date the property was deeded to Henry and Jeanette. Fair Market Values of Real Estate
The parties stipulated the following fair market values, as of the dates stated, for the properties at issue: Stipulated Fair Market Value
on Date Deed Executed &
Recorded
482.92 acres in Sections
5 and 6, Niles Township,
$135,000
Berrien County, Michigan,
(the home farm property)
deed dated 12/02/68. [1]
92.3 acres in Section 18,
Howard Township, Cass
$ 96,000
County, Michigan, deed
dated 6/20/79.
160 acres in Section 19,
Howard Township,Cass
$162,000
County, Michigan, deed
dated 6/20/79.
159.01 acres in Section 24,
Berrien Township, Berrien
$ 180,000
County, Michigan, deed dated
4/29/80.
158.29 acres in Section 18,
Howard Township, Cass County,
n2 $ 222,000 Michigan, deed dated 8/27/82.
297.17 acres in Sections 31
and 32, Berrien Township,
$ 348,500
Berrien County, Michigan,
deed dated 2/02/83.
*54 Income Tax Audit
The gift tax deficiency at issue arose out of an income tax audit of Henry and Jeanette. The audit addressed whether Henry and Jeanette received the 1979, 1980, 1982, and 1983 properties for services rendered. In an attempt to explain the nature of the transfers, petitioner sent a notarized letter to the revenue agent stating that she deeded the properties to Henry in consideration for his "time, labor and material[s]." Shortly after petitioner sent the letter, Henry hired a certified public *55 accountant to review the tax consequences of his receipt of the properties. The accountant prepared affidavits for petitioner's signature characterizing the transfers of the 1979, 1980, 1982, and 1983 properties as gifts. Petitioner signed the affidavits declaring that she intended to transfer the properties as gifts to Henry and Jeanette. Based on this information, the revenue agent terminated the income tax audit of Henry and Jeanette. Notice of Deficiency
In his notice of deficiency, respondent determined that transfers of the home farm property and the 1979, 1980, 1982, and 1983 properties by petitioner to Henry and Jeanette constituted taxable gifts. He also determined that petitioner was liable for additions to tax for failure to file Federal gift tax returns. ULTIMATE FINDINGS OF FACT 1. Petitioner's transfers of the 1979, 1980, 1982, and 1983 properties to Henry and Jeanette were taxable gifts. 2. The gifts of the 1979, 1980, 1982, and 1983 properties were made on the dates that the respective deeds were executed and recorded. 3. The home farm property was transferred to Henry and Jeanette on February 28, 1962. 4. The value of petitioner's one-half interest *56 in the 1982 property was 50 percent of the fair market value of the property on the date of donation. 5. Petitioner's failure to file Federal gift tax returns was due to willful neglect and not due to reasonable cause. OPINION We presume respondent's determinations in his notice of deficiency are correct. Petitioner bears the burden of overcoming this presumption. Rule 142(a). Section 2501 imposes a tax on the transfer of property by gift; section 2512(b) provides that "Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift". Whether the gift tax applies depends on the objective facts of the transfer and the circumstances under which the transfer is made, not on the donor's subjective motives. Sec. 25.2511-1(g)(1), Gift Tax Regs. Respondent posits that petitioner transferred all the properties in issue to Henry and Jeanette for less than adequate and full consideration and thus the transfers were subject to gift tax. Petitioner first argues that since she was not the rightful owner of the properties, she made *57 no gifts. Her argument is based on the premise that her acquisition of the properties resulted from an erroneous decision of the Michigan probate court, i.e., petitioner should not have been granted a fee simple interest in the properties. [2] We address petitioner's argument simply by stating that we defer to the Michigan probate court's order. [3] The terms of the order speak for themselves: petitioner received a fee simple interest in the properties she inherited from her father. Accordingly, we reject petitioner's argument. *58 Petitioner alternatively argues that if the transfers were gifts, then the gifts were completed for tax purposes in 1962. In addressing this argument, we must first decide whether petitioner transferred the properties to Henry and Jeanette as gifts. 1. The Transfers of the 1979, 1980, 1982, and 1983 Properties Were Gifts Not Sales
We are mindful that transactions within a family group are subject to special scrutiny; the presumption is that a transfer between family members is a gift. Estate of Reynolds v. Commissioner, 55 T.C. 172, 201 (1970). Petitioner failed to prove that Henry and Jeanette paid any consideration for the 1979, 1980, 1982, and 1983 properties. The deeds for these properties state that the consideration which Henry and Jeanette paid was either a small fraction of the properties' fair market value or a nominal amount, such as $ 1. Henry testified that he paid petitioner for all the properties. His testimony and the testimony of the other interested parties was not specific, persuasive, or conclusive. We discount his testimony because we find it self-serving and unworthy of belief. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). *59 In addition, the sworn affidavits signed by petitioner on the occasion of Henry's income tax audit stated that the transfers were gifts and that no consideration was paid. We find that Henry and Jeanette did not give any consideration to petitioner for the 1979, 1980, 1982, and 1983 properties. Further, we do not believe that there were oral contracts for these properties. [4] We hold that petitioner transferred the 1979, 1980, 1982, and 1983 properties to Henry and Jeanette for less than an adequate and full consideration in money or money's worth. Accordingly, the transfers of such properties constituted gifts, subject to the gift tax imposed by section 2501. 2. The Gifts of the 1979, 1980, 1982, and 1983 Properties Were Made on the Dates the Deeds Were Executed and Recorded
It is axiomatic that the value of property can *60 vary over time. Thus, to determine the amount of each gift, we must decide the respective date of its transfer. Respondent determined that each transfer of property occurred on the date the deed was executed and recorded. Petitioner contends that all of the transfers occurred in 1962, the year the 1962 contract was signed and the purported oral contracts were made. We have identified the following elements of a completed gift: (1) A donor competent to make the gift; (2) a donee capable of taking the gift; (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift, in praesenti; (4) the irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it; (5) a delivery by the donor to the donee of the subject of the gift or of the most effectual means of commanding the dominion of it; (6) acceptance of the gift by the donee * * * [Guest v. Commissioner, 77 T.C. 9, 16 (1981) (quoting Weil v. Commissioner, 31 B.T.A. 899, 906 (1934), *61 affd. 82 F.2d 561 (5th Cir. 1936))].
We agree with respondent that the 1979, 1980, 1982, and 1983 properties were transferred on the dates the deeds for such properties were executed and recorded. Having observed and evaluated the demeanor of petitioner and her witnesses, we are unable to give credence to their testimony. Petitioner failed to prove that she had "a clear and unmistakable intention * * * to absolutely and irrevocably divest * * * [herself] of the title, dominion, and control" of the 1979, 1980, 1982, and 1983 properties in 1962, within the meaning of element (3). And, as previously stated, we do not believe that the purported oral contracts existed. 3. Home Farm Property Was Transferred in 1962
We find that the home farm property was transferred from petitioner to Henry and Jeanette on February 28, 1962, a tax period not before us. Respondent cites Estate of Whitt v. Commissioner, 751 F.2d 1548 (11th Cir. 1985), affg. T.C. Memo. 1983-262, to support his argument that petitioner's gift of the home farm property occurred in 1968 when the deed was recorded. In Estate of Whitt v. Commissioner, supra at 1560-1561, *62 the Eleventh Circuit Court of Appeals held that this Court's finding that the gifts were complete when the deeds were recorded and not when the deeds were executed was not clearly erroneous. The Eleventh Circuit noted that under the applicable state recording act, a grantor could defeat an unrecorded deed by executing a deed to the same property to a bona fide purchaser. Id. at 1561. The Eleventh Circuit stated: We do not say that in every instance a gift of real property is incomplete for federal tax purposes until the deed of conveyance is recorded. All we are saying is that in this case there were sufficient facts from which the Tax Court could conclude that these gifts were not intended to be completed until the recordation of the respective deeds. * * * [Id.]
Even though the deed for the home farm property was not recorded until 1968, the evidence in this case supports a finding that the transfer of the home farm property (as between petitioner and Henry and Jeanette) was completed in February 1962. 4. Value of Petitioner's Interest in the 1982 Property Was 50 Percent of Its Fair Market Value
The parties stipulated that petitioner *63 and Henry owned the 1982 property as joint tenants and that the property's fair market value (as a whole) was $ 222,000 on August 27, 1982. Having considered the parties' arguments as to the value of petitioner's interest in this property, we hold that the value of the one-half interest transferred by petitioner on August 27, 1982, was 50 percent of the fair market value of the whole, or $ 111,000. As to the value of the 1979, 1980, and 1983 properties, we adopt their respectively stipulated fair market values on the dates the deeds were executed and recorded. 5. Petitioner's Failure to File Was Due to Willful Neglect
Respondent determined that petitioner is liable for the additions to tax imposed by section 6651(a)(1). That section imposes an addition to tax for failure to file a return in a timely manner, unless it is shown that such failure was due to reasonable cause and not due to willful neglect. Petitioner bears the burden of proving reasonable cause. Heman v. Commissioner, 32 T.C. 479, 490 (1959), affd. 283 F.2d 227 (8th Cir. 1960). There is no question that petitioner did not file gift tax returns. As a result, we need only *64 decide whether her failure was due to reasonable cause. Petitioner is a knowledgeable taxpayer. She has had extensive dealings in land transactions over the years. She has a lifetime of experience in the farming business and has generated substantial personal income from investments in corporate and government securities. See Warda v. Commissioner, T.C. Memo. 1988-572; Warda v. Commissioner, T.C. Memo. 1985-601. There is nothing in the record which would indicate that petitioner sought and relied on the advice of counsel regarding the filing (or nonfiling) of gift tax returns; thus, petitioner's mistaken belief that no returns were due does not constitute reasonable cause for noncompliance. Heman v. Commissioner, supra at 490. Accordingly, respondent's determination as to the section 6651(a)(1) additions to tax is sustained. Decision will be entered under Rule 155. Footnotes
1. On October 22, 1990, petitioner and Henry petitioned to reopen the estate proceeding with the objective of changing the Michigan probate court's award of the estate's assets. As of the date of this Opinion, no disposition of this matter by the probate court has been made.↩
1. Petitioner contends that the 1968 fair market value for the home farm property is not relevant. She argues that this property should be valued as of Feb. 28, 1962, the date of the 1962 contract. In contrast, respondent considers the 1962 fair market value to be irrelevant. Specifically, petitioner argues that, based on her father's second will, the probate court should have determined that he left his estate to a trust which granted petitioner only a life estate in the income from the trust plus use of the home farm property. Petitioner contends that upon her death the trust was to be dissolved and the entire corpus distributed in fee simple absolute to Henry. Accordingly, she argues that the subsequent transfers of the properties from her to Henry and Jeanette were nontaxable distributions from a constructive trust, rather than gifts. [2]↩ The parties agree that petitioner made a gift of her one-half interest in this parcel to Henry and Jeanette during the tax period ending Dec. 31, 1982. The stipulated fair market value is for a 100-percent ownership interest.
3. Petitioner cites the Michigan case of In re Marxhausen's Estate, 225 N.W. 632↩ (Mich. 1929), as authority for overturning a Michigan probate court's order. That case does not support petitioner's argument. To the contrary, that case exemplifies the power of Michigan probate courts to approve settlements and the deference that must be given to such orders.
4. We are mindful that Michigan's statute of frauds provides that agreements for the sale of real property are invalid unless in writing. Mich. Stat. Ann. sec. 26.908 (Callaghan 1982).↩