*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CAR.

---

ABIGAIL PEOPLES,

        Petitioner-Appellee,

and

BRADLEY REDEKER,

        Petitioner,

v

CAR,

        Respondent-Appellant.

UNPUBLISHED
August 10, 2023

No. 364609
Kent Probate Court
LC No. 10-918871-MI

---

Before: YATES, P.J., and BORRELLO and PATEL, JJ.

PER CURIAM.

On January 3, 2023, after hearing testimony from three witnesses, the probate court entered an order for continuing hospitalization of respondent, CAR. Respondent appeals the order of right, contending that the probate court improperly relied on respondent's mental-health history instead of respondent's current circumstances and failed to consider the harm that necessarily flows from continuing respondent's treatment. We affirm.

## I. FACTUAL BACKGROUND

Respondent has been involved in court-ordered mental-health treatment since 2010. Most recently, in April 2022, a petition was filed describing respondent as behaving in a delusional and unusual manner. Respondent had not slept in 40 hours, walked from the hospital to the Fifth Third Ballpark, and attempted to close the gate with his own chain. It was decided that respondent was suffering from a psychotic episode because of a recent medication change. During an evaluation, respondent told his doctor that he did not want medication because "he is sick of being a guinea pig." Ultimately, respondent stipulated to the entry of an initial order for mental-health treatment

-1-

under which he would receive a combination of 60 days of hospitalization and assisted outpatient treatment with Network 180 to expire on October 25, 2022.

In June 2022, a notification of noncompliance to the probate court described respondent as agitated and delusional. The petition explained that respondent stated: "I have a bat, a chain, a noose, and I am not leaving my garage" and that "everything is unsafe, the schools are unsafe, the animals are unsafe." The petition further indicated that respondent only attended one appointment since he was discharged from the hospital. The petition stated that respondent's mother reported that respondent was experiencing delusions, was not taking his medications, and was trying to put chains on gates in the community, so she called the police. Another notification of noncompliance filed in September 2022 described respondent as delusional, paranoid, and confused. It also noted that he was violent and aggressive because he made threats of violence and property destruction.

On October 13, 2022, respondent stipulated to the entry of a second order of mental-health treatment that extended court-ordered outpatient services for an additional 90 days without initial hospitalization. Outpatient services were ordered, including case management, medication, blood or urinalysis testing, individual therapy, community treatment, and other services recommended by the treatment provider.

In December 2022, a new petition for continuing mental-health treatment was filed seeking to extend the existing order scheduled to expire in January 2023. Petitioner requested a one-year continued order for hospitalization and assisted outpatient treatment based on respondent's "poor insight into his need for medication or treatment," opining that respondent was unlikely to continue either. The petition explained that respondent was diagnosed with schizoaffective bipolar disorder, post-traumatic stress disorder, and attention deficit hyperactivity disorder and that respondent had shown "marked improvement" with ACT services and trauma-informed therapy. Respondent had been working with his treatment provider to determine appropriate medications and collaborative care. The petition was accompanied by a clinical certificate from Dr. Jack Mahdasian, certifying that Dr. Mahdasian personally examined respondent on December 21, 2022, and determined that respondent continued to be a "person requiring treatment." Dr. Mahdasian reached that conclusion based upon respondent's history of mood and thought disorder, repeated hospitalizations, multiple suicide attempts, homelessness, denial of mental-illness diagnoses, and chronic inconsistency in taking his medications without a court order.

In January 2023, a hearing on the petition for one-year continued mental-health treatment was held. Ultimately, the probate court found clear and convincing evidence that respondent was a "person requiring treatment." The probate court observed that respondent suffered from a mental illness—specifically, schizoaffective disorder bipolar type—and that he could be a risk of harm to himself and others when not compliant with his medication regimen. After reviewing respondent's history, the probate court found that respondent could maintain his basic needs of daily living, but that he lacked understanding concerning his need for treatment, which caused respondent to seem unwilling to adhere to his treatment plan. The probate court reiterated that there was a substantial risk of significant physical harm to himself and others and mental harm to himself if respondent was not compliant with his medications. The probate court explained that it "ha[d] considered the alternative treatment report." It determined that hospitalization was not the least restrictive form of mental-health treatment, so the court ordered "initial hospitalization of zero days" with "assisted outpatient services from ACT Delta including a plan, medication, and urinalysis" for a year. The

probate court decreed that respondent's treating physician had the authority to change respondent's medication regimen without any interference from the court. In other words, respondent was found to be a "person requiring treatment" because he had a mental illness and, as a result of that mental illness, he was reasonably expected, in the near future, intentionally or unintentionally, to seriously physically injure himself or others. Beyond that, his judgment was so impaired by mental illness, and his lack of understanding of the need for treatment was so substantial, that he demonstrated an unwillingness to voluntarily participate in treatment. Respondent now appeals.

## II. LEGAL ANALYSIS

This Court reviews a probate court's dispositional decisions for an abuse of discretion. *In re Tchakarova*, 328 Mich App 172, 182; 936 NW2d 863 (2019). A trial court abuses its discretion whenever its decision "falls outside of the range of reasonable and principled outcomes." *In re Conservatorship of Brody*, 321 Mich App 332, 336; 909 NW2d 849 (2017) (quotation marks and citation omitted). This Court reviews a probate court's factual findings only for clear error. *In re Tchakarova*, 328 Mich App at 182. A trial court's findings are clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake was made. *In re Bibi Guardianship*, 315 Mich App 323, 329; 890 NW2d 387 (2016). This Court reviews de novo matters of statutory interpretation. *In re Portus*, 325 Mich App 374, 381-382; 926 NW2d 33 (2018). But this Court reviews an unpreserved claim of error, whether constitutional or nonconstitutional, for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).[1] To constitute plain error, an error must have occurred, the error must have been clear or obvious, and the error must have affected substantial rights. *Id*. at 763. In other words, the error must have "affected the outcome of the lower court proceedings." *Id*. With these standards in mind, we shall address each of respondent's claims of error.

## A. PERSON REQUIRING TREATMENT

Respondent faults the probate court for finding that he was a "person requiring treatment." The probate court listed two bases to conclude that respondent was a "person requiring treatment," MCL 330.1401(1)(a) and MCL 330.1401(1)(c). Respondent concedes that he has a mental illness, but he argues that the probate court improperly determined that he posed a substantial risk of harm to himself or others. Additionally, respondent insists that the probate court improperly determined that he was noncompliant and unwilling to maintain treatment without a court order. We conclude that the probate court correctly found that respondent was a "person requiring treatment" as defined by the statutory language, and that the probate court adequately considered respondent's treatment recommendation, treatment alternatives, and whether respondent was improving with treatment.

Proceedings requesting an order of involuntary mental-health treatment under the Mental Health Code, MCL 330.1001 *et seq*., for a person based on mental illness usually are described as

---

[1] Although this Court has recently held that "the plain-error rule of *Carines* does not apply to civil cases," *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ____ (2023) (Docket No. 359090); slip op at 5, the rule should apply to civil-commitment cases because, like termination-of-parental-rights cases, civil-commitment cases present different constitutional considerations than traditional civil cases. See *id*. at ___; slip op at 5 n 3.

civil-commitment proceedings. *In re Portus*, 325 Mich App at 382. The specific procedures for obtaining continuing orders of hospitalization or other forms of treatment on the basis of a person's mental illness are contained in various provisions of Chapter 4 of the Mental Health Code, MCL 330.1400 *et seq*. *Id*. Any adult may initiate civil-commitment proceedings by petitioning a probate court to find that an individual is a "person requiring treatment" under the Mental Health Code, MCL 330.1434(1). According to MCL 330.1401(1), a "person requiring treatment" means:

> (a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.
>
> \* \* \*
>
> (c) An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

A respondent need only qualify as a "person requiring treatment" under one subsection of MCL 330.1401(1) to support a court order for mental-health treatment. MCL 330.1401(1) (stating that a "person requiring treatment" may qualify under either subdivision "(a), (b), or (c)"). Mental illness is defined as a "substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g). A judge or jury must find that an individual is a person requiring treatment by clear and convincing evidence. MCL 330.1465. "Evidence is clear and convincing if it produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). Here, the probate court cited two separate subsections—MCL 330.1401(1)(a) and (c)—in finding that respondent was a "person requiring treatment," so we shall address those grounds separately, recognizing that just one ground is enough to support the trial court's ultimate finding.

### 1. MCL 330.1401(1)(A)

The probate court received clear and convincing evidence that respondent could reasonably have been expected to intentionally or unintentionally seriously physically injure himself or others without treatment, as contemplated by MCL 330.1401(1)(a). Respondent had been subjected to court-ordered mental-health treatment since 2010. Numerous petitions indicated that respondent had struggled with delusional behavior and exhibited violent and unpredictable behavior, including threatening those close to him, schools, and himself. Respondent had vacillated between accepting and resisting treatment throughout the years and had expressed frustration with his medications on

-4-

numerous occasions. Recent evidence revealed that respondent had stopped taking his medications on occasion because of a mix-up with COVID-19 medication and because he chose to do so. There were several documented notifications of noncompliance filed despite respondent's court-ordered treatment. In every instance, respondent was overcome by mental illness and he became agitated, attempted to break into a baseball stadium, and required law-enforcement intervention.

Respondent asserts that any behavior that may have indicated that he remained a threat to harm himself or others was the result of a medication change. Respondent also contends that there was no present risk of harm and that the trial court improperly looked back in time to decide that respondent continued to present a risk of harm. Respondent notes that the pertinent statutes, MCL 330.1420 and MCL 330.1401, are written in the present tense, which means that the probate court must look at respondent's present circumstances instead of circumstances that existed under a prior court order. Contrary to respondent's argument regarding the tense of the statutory language, that language specifically requires the probate court to consider the respondent's history in making its determination that a respondent continues to be a "person requiring treatment." According to MCL 330.1401(1)(a), the probate court can find that a person may be a "person requiring treatment" on the basis of the fact that the person "has engaged in an act or acts or made significant threats that are substantially supportive of the expectation." That language indicates that a probate court may review past acts and threats in making its determination. For example, this Court has considered a respondent's history of posing a risk of harm to herself and others in determining that she was a "person requiring treatment" on the basis of the respondent's history of traffic tickets and the fact that her recent behavior was a result of her ongoing mental-health issues. See *In re Tchakarova*, 328 Mich App at 183. This Court looked back in time and explained that the respondent's recent behavior was "part of an ongoing pattern of behavior dating back to 1993," *id.*, and that there was "a reasonable expectation of intentional or unintentional serious physical injury to the respondent or another individual in the near future." *Id.* at 184.

Here, the probate court explained that it looked both backward and forward when making its determination. The probate court noted that respondent had suicidal ideations for 8 to 10 years, numerous hospitalizations, and multiple break-ins at Fifth Third Ballpark. The probate court also observed that respondent continues to suffer from mental illness and that his lack of understanding and his need for treatment pose a risk of physical harm to himself or others if he does not take his medication. The probate court's explanation reveals that the probate court considered respondent's history and current circumstances. The most recent petition included the opinion of respondent's treatment provider that respondent would not continue treatment or his medication regimen. Most importantly, the probate court considered testimony that respondent recently stated that he did not suffer from mental illness and that he was extremely frustrated with his treatment regimen. Thus, the probate court properly considered both respondent's past and current circumstances in making its determination to continue court-ordered treatment.

2. MCL 330.1401(1)(C)

The probate court also had overwhelming evidence that respondent's lack of understanding of his need for treatment had caused him to demonstrate an unwillingness to voluntarily participate in necessary treatment, as envisioned by MCL 330.1401(1)(c). Respondent argues that the probate court inappropriately relied on inadmissible evidence from respondent's history of mental illness to decide that respondent was not, and would not be, compliant. But the evidence presented to the

-5-

probate court clearly and convincingly revealed respondent's lack of understanding of his need for treatment that led to an unwillingness to voluntarily participate in treatment.

The probate court heard testimony from Dr. Mahdasian about respondent's belief that he was not mentally ill and respondent's strong opposition to his treatment regimen. Dr. Mahdasian testified concerning respondent's "long-standing history of severe, persistent mental illness" and "previous hospitalizations." Additionally, Dr. Mahdasian testified regarding respondent's history of unwillingness to continue his care, respondent's unwillingness to continue his medications, and respondent's history of harm to himself or others. In contrast, respondent and his mother testified that he was fully aware of his mental illness and planned to continue his treatment and medication as recommended and that any evidence of noncompliance was due to the adverse reactions that he suffered from the medication.

The probate court had to choose between conflicting evidence about whether respondent understood his mental illness and respondent's willingness to comply with treatment. The probate court chose to accept Dr. Mahdasian's testimony. We must defer to the probate court "on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Portus*, 325 Mich App at 397 (quotation marks and citation omitted). The probate court received evidence about respondent's history of noncompliance and the serious consequences that resulted when respondent was not properly medicated. The probate court had long-standing participation in respondent's mental-health treatment and was aware that respondent vacillated since 2010 between agreeing and disagreeing with his treatment providers and their treatment recommendations. Further, the probate court had evidence that respondent's mother reported noncompliance at one time and then recanted her statements at another time. As a result, the probate court could properly find Dr. Mahdasian and the evidence about respondent's noncompliance more credible in determining that respondent was a "person requiring treatment" under MCL 330.1401(1)(c).

## B. STATUTORY REQUIREMENTS FOR THE PETITION

Respondent contends that the petition filed in this case did not include information required by statute. Respondent's appeal stems from a petition for a continuing order of involuntary mental-health treatment filed pursuant to MCL 330.1473, which provides:

> Not less than 14 days before the expiration of an initial, second, or *continuing* order of involuntary mental health treatment . . . a hospital director or an agency or mental health professional supervising an individual's assisted outpatient treatment shall file a petition for a second or continuing order of involuntary mental health treatment if the hospital director or supervisor believes the individual continues to be a person requiring treatment and that the individual is likely to refuse treatment on a voluntary basis when the order expires. The *petition shall contain* a statement setting forth the reasons for the hospital director's or supervisor's or their joint determination that the individual continues to be a person requiring treatment, a statement describing the treatment program provided to the individual, the results of that course of treatment, and a clinical estimate as

to the time further treatment will be required. The petition shall be accompanied by a clinical certificate executed by a psychiatrist. [Emphasis added.]

The petition here satisfied all those statutory requirements. The petition was completed on a form approved by the State Court Administrative Office. It offered a statement setting forth the reasons respondent needed continued treatment, explaining that respondent "shows poor insight into his need for medication or treatment and would be unlikely to continue either." The petition described respondent's treatment, identifying "ACT services and trauma-informed therapy" as the programs provided to respondent. Also, the petition reported that respondent had shown "marked improvement as a result of both." The petition estimated that a year was necessary for further time to provide required treatment if the petition were granted. Finally, the petition was accompanied by a clinical certificate by Dr. Mahdasian, a psychiatrist and consultant of respondent's treatment provider. In other words, the petition met the statutory requirements and included the necessary information. Therefore, the probate court did not abuse its discretion by relying on the petition in its determination to continue respondent's mental-health treatment.

## C. ALTERNATIVES TO HOSPITALIZATION

Respondent next asserts that the probate court did not comply with MCL 330.1470, which mandates consideration of alternatives to hospitalization. According to MCL 330.1470: "Prior to ordering the hospitalization of an individual, the court shall inquire into the adequacy of treatment to be provided to the individual by the hospital." Beyond that, hospitalization "shall not be ordered unless the hospital in which the individual is to be hospitalized can provide him with treatment which is adequate and appropriate to his condition." *Id*. Respondent argues that, under that statute, the probate court can order hospitalization only if the respondent will improve with treatment, but the probate court here failed to find that the court-ordered treatment will benefit respondent.

Before ordering treatment for a "person requiring treatment," the probate court is mandated by MCL 330.1469a(1) to take three actions: (1) determine "whether a treatment program that is an alternative to hospitalization or that follows an initial period of hospitalization is adequate to meet the individual's treatment needs and is sufficient to prevent harm that the individual may inflict upon himself or herself or upon others within the near future"; (2) determine "whether there is an agency or mental health professional available to supervise the individual's treatment program"; and (3) "[i]nquire as to the individual's desires regarding alternatives to hospitalization." Then, if "the court determines that there is a treatment program that is an alternative to hospitalization that is adequate to meet the individual's treatment needs and prevent harm that the individual may inflict upon himself or herself or upon others within the near future and that an agency or mental health professional is available to supervise the program, the court shall issue an order for assisted outpatient treatment or combined hospitalization and assisted outpatient treatment in accordance with section 472a." MCL 330.1469a(2). If the probate court "orders assisted outpatient treatment as the alternative to hospitalization, the order must be consistent with the provisions of section 468(2)(d)[,]" MCL 330.1469a(3), which lists various types of treatment that the probate court has the discretion to order.

Here, the probate court specifically stated that it considered the alternative-treatment report before deciding that assisted outpatient treatment with no initial hospitalization was available and

appropriate for respondent. The alternative-treatment report noted that respondent's case manager believed the ACT program with Network 180 and other mental-health programs to which Network 180 referred were available to treat respondent. The case manager recommended hospitalization followed by assisted outpatient treatment because respondent had been able to stay out of inpatient hospitalization since working with Network 180. The probate court then ruled that hospitalization was not the least restrictive treatment and observed that no one was advocating for hospitalization. The probate court then explained: "I will be happy to order anywhere in between zero and one year of hospitalization. Zero days initial—initial hospitalization of zero days, and then the outpatient portion will be for one year. There will be assisted outpatient services from ACT Delta including a plan, medication, and urinalysis."

The probate court had evidence about respondent's treatment from respondent's treatment providers, respondent's history of mental-health treatment, and recommendations by respondent's case manager concerning the best course of treatment for respondent. The probate court used its discretion and made a credibility determination about respondent's noncompliance and likelihood to continue his treatment and medication regimen. In addition, the probate court received evidence that respondent's treatment up to that point had prevented him from being hospitalized, which was a significant difference compared to respondent's previous hospitalizations that led up to the most recent petition. Further, the main issue that respondent raised as a concern was the psychiatrist's belief that she could not adjust respondent's medications as she deemed appropriate. The probate court repeatedly clarified that this was not the case and that the psychiatrist could adjust and treat respondent according to her discretion. In fact, respondent was undergoing extensive testing to determine the best medication for his mental illness under the ongoing treatment regimen. This eliminated any potential possibility of a medication problem, which was a main point of contention in respondent's arguments on appeal. Thus, the probate court properly considered respondent's alternative-treatment options and did not err by ordering respondent to continue assisted outpatient treatment.[2]

## D. INADMISSIBLE EVIDENCE

Finally, respondent contends that the probate court relied upon inadmissible evidence when reviewing past reports of noncompliance. Under the Mental Health Code, parties have the right to present documents and witnesses and to cross-examine witnesses. MCL 330.1459. The court shall receive all relevant, competent, and material evidence that may be offered. The rules of evidence in civil actions apply, except to the extent that specific exceptions have been created by statute or court rule. MCL 330.1459(2). A probate court is permitted to take judicial notice of its own files. MRE 201; *In re Marxhausen's Estate*, 247 Mich 192, 199; 225 NW 632 (1929). "A judicially

---

[2] Respondent accuses the probate court of violating his right to due process by not permitting him to choose his own course of treatment. Due process mandates that a deprivation of life, liberty, or property cannot occur without notice and an opportunity to be heard. *Lamkin v Hamburg Twp Bd of Trustees*, 318 Mich App 546, 550; 899 NW2d 408 (2017). Respondent does not assert that he was denied notice, and a trial was held in this matter. Therefore, respondent's due-process rights were not violated by the probate court's finding that respondent was a "person requiring treatment" based on the evidence adduced at the trial.

noticed fact must be one 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' " *People v Burt*, 89 Mich App 293, 297; 279 NW2d 299 (1979), quoting MRE 201(b)(2).

With regard to respondent's noncompliance reports, MCL 330.1475 prescribes the proper course for reporting noncompliance. If an agency or mental-health professional who is supervising an individual's assisted outpatient treatment program decides that the individual is not complying with an existing order, the supervising agency or mental-health professional must notify the court immediately. MCL 330.1475(1). Once the probate court is notified, the court has many options, including modifying the existing order *without a hearing*. See MCL 330.1475(2)(a) to (b); MCL 330.1475(3); MCL 330.1475(4)(a) to (c). This means that the probate court is directly notified of noncompliance and that court has significant discretion in responding to any noncompliance. The reports of noncompliance are then retained in the individual's file.

In this case, the probate court received two notifications of noncompliance and referred to those two documents during respondent's trial. We recognize the notifications of noncompliance as judicially noticed facts because the probate court can initiate hospitalization or other alternatives without a hearing. The probate court's discretion to do so bespeaks dependability and reliance on these notifications of noncompliance considering they may directly impact the treatment plan of a respondent even without the respondent having a hearing. Further, respondent could have opposed the notifications of noncompliance at the time that each was filed, but he did not. The notifications of noncompliance were retained in respondent's probate file, and the probate court was well aware of respondent's history of noncompliance based upon the notifications and the court's experience with respondent since 2010. Thus, the reports of noncompliance were judicially noticed facts that the probate court appropriately considered during respondent's trial.

Affirmed.

/s/ Christopher P. Yates
/s/ Stephen L. Borrello
/s/ Sima G. Patel